H. LEONARD & SONS *v.* STOWE.

HUSBAND AND WIFE — NECESSARIES SOLD TO WIFE — SALES —
ACTIONS — LIABILITY OF HUSBAND FOR GOODS SOLD TO WIFE —
MARRIAGE.

> While the fact that goods sold to a married woman were
> charged to her on the books of the seller does not, as against
> the vendor, work an estoppel to claim that they were sold on
> the credit of the husband, the seller cannot hold the husband
> for goods furnished to the wife under a contract, in writing
> signed by her, retaining title to the goods until they are paid
> for, and leaving no implication that the seller relied on the
> credit of the husband; especially on a record showing that
> the wife was joined as a party to the action and judgment
> taken against her.

Error to the superior court of Grand Rapids; Stuart, J.
Submitted June 14, 1911. (Docket No. 52.) Decided
September 29, 1911.

Assumpsit by H. Leonard & Sons, a corporation,
against Ernest A. Stowe and Harriet E. Stowe for the
price of goods sold. A judgment for plaintiff against
Harriet E. Stowe and for defendant Ernest A. Stowe, on a
verdict directed by the court, is reviewed by plaintiff on
writ of error. Affirmed.

*A. A. & H. A. Ellis*, for appellant.

*Hatch, McAllister & Raymond*, for appellees.

Plaintiff is a mercantile corporation. The defendants
are husband and wife, living together, maintaining a home
in the city of Grand Rapids, Mich. This action was
brought to recover the purchase price of certain merchan-
dise furnished by the plaintiff during the period from
April 25, 1902, to March 29, 1904; the total sum charged for
it being $3,285.31. The plaintiff declared specially upon

two written contracts, with the averment that they were
entered into on or about October 10, 1902, by the defend-
ant Harriet E. Stowe, in her own behalf and in behalf of
the defendant Ernest A. Stowe, and as his agent. By
the terms of these contracts, the agreement is between
plaintiff and Mrs. E. A. Stowe, and each contains recitals
to the effect that "said first party agrees to sell said sec-
ond party on fulfillment of this contract in every particu-
lar," etc. In each contract title to the goods is retained
in the first party until they are paid for, "at which time
said first party agrees to transfer the title thereto to said
said second party." In each the second party agrees to
pay the amount due in monthly payments of $20 each.
In the first contract the property described is:

| Bill of April 25th, '02, amounting to | $937 | 23 |
|---|---|---|
| Bill of Oct. 8th, '02, amounting to | 311 | 11 |
| Bill of Oct. 10, '02, amounting to | 21 | 04 |
| | $1,269 | 38 |

In this contract it is expressly agreed between the
parties that, if the second party fails to make any pay-
ment at the time therein. specified, the agreement to sell
the goods shall be considered void at the option of the
first party, who may, without notice or demand, take
possession of the goods; and the amount which has at
such a time been paid to the first party shall be considered
as paid for the use of the goods.

In the second contract, which bears the same date as
the first, but which was made later and dated back, as
the testimony shows, the goods sold are described as in
the first, and there is a further provision that the first
party is authorized to indorse upon the contract merchan-
dise thereafter purchased by the second party, and by
said indorsement such merchandise shall immediately be
subject to all the provisions of the contract; title to such
after-purchased goods to remain in the party of the first
part. There is the further provision that, if there is a
failure to make payments as specified, the agreement to

sell shall be considered void; the amount unpaid, whether due or not, shall, at the option of the first party, become due forthwith, without notice of any kind to the second party; the first party may immediately take possession of the goods; the amount paid shall be considered as paid for the use of the goods; and the first party shall have the right, after taking possession, to recover in any court of competent jurisdiction the balance due to said first party under the terms of the contract, and in such event shall recover against the second party as liquidated damages the unpaid balance and in addition 25 per cent. of said amount for damages for breach of the contract, and for wear, damage to, and use of the property. It is averred that other goods were added to the said contract until the total amount thereof was $3,285.31, upon which there was paid $540, leaving a balance of $2,745.31. It is averred that Harriet E. Stowe, for and in her own behalf, and in behalf of her husband and as his agent, purchased these goods, and in her own behalf, and in behalf of her husband, promised to pay plaintiff the sum of $20 a month therefor; that payment has not been made. In a second count it is alleged by way of inducement that the defendant Ernest A. Stowe, before and at the time of making the promises and undertakings mentioned, was a man possessed of great wealth, prominent in the business world of the city of Grand Rapids, and that both said defendants, because of the wealth and prominence of Ernest A. Stowe, were liable to the demands of society, and were compelled to do their share of entertaining, and that they maintained an establishment (domicile) in an exclusive residence portion of the city of Grand Rapids, having as neighbors other persons of wealth and prominence, and that it became necessary that the furnishings of the home of defendants should accord with those affected by others in like station in life, and necessary that defendants should furnish their home with costly ornaments, bric-a-brac, and other furnishings. On account of all this, it is averred, the contracts already referred to were entered into, the goods

mentioned therein were purchased, and goods were afterwards purchased, as has been stated. The declaration concludes with the common counts in assumpsit. A bill of particulars was required and was furnished. Defendant Harriet E. Stowe, by her counsel, pleaded the general issue, and afterwards withdrew her plea. Defendant Ernest A. Stowe, by his counsel, pleaded the general issue. He also denied under oath the signing and execution of the written instruments declared upon, or either of them, and denied that he authorized any other person to execute the same in his name or behalf, or otherwise.

The cause coming on to be tried in the superior court of Grand Rapids, with a jury, plaintiff offered testimony tending to prove that an account was opened by plaintiff with Mrs. Stowe some time in 1895; that thereafter and up to 1902 a considerable quantity of goods had been bought by her and charged to her; that in October, 1902, when the first contract was made, the unpaid balance of this account, consisting of the three bills already referred to, amounted to $1,269.38, all charged upon the books to Mrs. Stowe; that after the making of the contracts goods were purchased and charged in the same way; that the goods were, many of them, delivered at the residence of the defendants, and were used to furnish the residence; all of the testimony tending to prove that the first of the goods in question here were bought April 25, 1902, and the last March 29, 1904. All the goods in question are covered by the terms of the contracts, and a complete schedule of the goods is attached to the contracts. Defendant Ernest A. Stowe is not a party to the contracts. Neither purports to be executed for him or in his behalf, or by any person as his agent. The sole parties to the contracts are the plaintiff and Mrs. Stowe. Offers made by counsel for the plaintiff to prove that Mrs. Stowe was acting as the agent of her husband in buying these goods and in making the contracts, by testimony of her statements made in the absence of her husband, were excluded. Other rulings complained of are shown by the following:

"*Q.* How were the goods charged all the way through ?

"*A.* Always charged to Mrs. E. A. Stowe.

"*Q.* On whose responsibility did you trust her for those goods ?

"*Mr. Hatch:* I object to that, as a conclusion of law.

"*The Court:* The objection is sustained.   *   *   *

"*Witness:* She bought at our store, as near as I can ascertain at the present time, prior to the amount of goods that are here in this case, ten or twelve hundred dollars' worth. We never made any different arrangements with her from the time she commenced to buy goods up until the time she had bought over $1,200 worth on the bills in this case.

"*Q.* The goods were bought and paid for ?

"*A.* Yes, sir.

"*Q.* From time to time ?

"*A.* Yes, sir.

"*Q.* All charged to her?

"*A.* Yes, sir. She commenced buying goods in 1895, to buy goods for furnishing the house on Kellogg street. She came in that year, and the first bill was paid by Mr. Stowe himself, and she bought goods down to 1902. It so happened that the payment just balanced a certain number of bills on the ledger, and our bookkeeper drew a red line and balanced the book up; but really there was no break whatever in the purchases from the first to the very end. She notified us that she was getting the goods for the home, so she continued to buy until October, 1902, and she came in one day (there was owing about twelve hundred) and said—

"*Mr. Hatch:* I object to what she said.

"*Mr. Ellis:* I offer to show that an arrangement was made at her request, and for the benefit of Mr. Stowe and herself, to get time on these goods, without any idea on Mr. Leonard's part of releasing Mr. Stowe at all from liability for the goods.

"*Mr. Hatch:* She is not a competent witness against him, under the statute, and we object to any statement she may have made, the same as though she was on the stand. It would be hearsay, anyway.

"*Mr. Ellis:* It is the claim, and Mr. Stowe is trying to defend against paying for these goods on account of what his wife did. Mr. Stowe wants to defend against this contract, and wants the contract.

"*The Court:* Her statements, without any acquiescence or presence on his part, would not bind him.

"*Mr. Ellis:* It may be true that her statements would not bind him; then her actions would not bind him, and this contract would not bind him. They claim, inasmuch as she made this contract, and was not authorized to make it by him, therefore it is her contract; if it is what she said about her own contract, it would be competent whether Mr. Stowe was around or not. If it is his contract, we are content.

"*The Court:* You claim against her, too.

"*Mr. Ellis:* We cannot help but get a judgment against her; she has withdrawn her plea, and we are entitled to a judgment against her without any evidence at all.

"*The Court:* Then the objection is sustained. * * *

"*Q.* At the time you made that contract (calling attention to what is known as Exhibit C, first contract), was there any understanding or agreement, or suggestion by anybody, that you would release Mr. Stowe from liability for those goods?

"*A.* No, sir.

"*Mr. Hatch:* I object to that as incompetent, irrelevant, and immaterial; the question assumed that Mr. Stowe was there.

"*The Court:* Objection sustained. * * *

"*Q.* Up to the time that this contract was made, and after this contract was made, to whom did you look for the payment of these goods?

"*Mr. Hatch:* We object to that as incompetent, irrelevant, and immaterial. The contract is with Mrs. Stowe, and the goods are charged to her.

"*The Court:* The objection is sustained. * * *

"*Q.* Was it represented to you at the time by Mrs. Stowe, when you made this contract, that Mr. Stowe wanted additional time to pay for these goods, and that he would pay for them, and asked for this contract back, simply to extend the time of payment?

"*Mr. Hatch:* Objected to as incompetent, irrelevant, and immaterial.

"*The Court:* Sustained."

Defendant offered no testimony, and the court directed a verdict against Mrs. Stowe and in favor of her husband, upon which verdict judgment was duly entered, and from

the judgment in favor of defendant Ernest A. Stowe the plaintiff has appealed.

OSTRANDER, C. J. ( *after stating the facts*).   At considerable length counsel for the appellant has argued, and has supported by reference to decided cases, principles of law not controverted and not involved.   The fact that the goods were charged upon plaintiff's books to Mrs. Stowe would not necessarily estop plaintiff to claim that the goods were sold upon the credit of the husband.   *Larson* v. *Jensen,* 53 Mich. 427, 430 (19 N. W. 130); *Taylor-Woolfenden Co.* v. *Atkinson,* 127 Mich. 633 (87 N. W. 89).   The general principle which makes the wife, permitted to purchase goods, necessaries, and other than necessaries, the agent of her husband to pledge his credit therefor is not disputed.   The essential and controlling fact in the case at bar is that the goods were not sold, or agreed to be sold, upon the credit of the husband, but upon the credit of the wife, who had the undoubted right to so contract.   *Metcalfe* v. *Shaw,* 3 Campbell, 22.   It seems to be unnecessary to state that in the face of the written contracts plaintiff is not permitted to say that the goods were in fact agreed to be sold upon the credit of Mr. Stowe. The contracts are express.   Nothing is left to implication. Assuming that Mrs. Stowe, as wife, had authority, express or implied, to bind her husband by purchases of goods, she did not undertake to bind him.   And, if any fact necessary to the argument should be otherwise considered lacking, we have the fact that the suit is begun against the wife, and that plaintiff has a judgment against her for the value of the goods.

The judgment is affirmed.

BIRD, BROOKE, BLAIR, and STONE, JJ., concurred.