PRITCHARD *v.* BIGGER.

1. HUSBAND AND WIFE—WIFE'S PLEDGE OF HUSBAND'S. CREDIT TO OBTAIN NECESSARIES—PRESUMPTIONS.

Presumption that wife was authorized to pledge her husband's credit to secure for herself the necessaries of life cannot obtain where they were not residing together.

2. SAME—CREDIT GIVEN WIFE.

If credit is in fact given to the wife, no one else will be liable even though the circumstances were such that she might have pledged her husband's credit.

3. SAME—EXTENSION OF CREDIT FOR WIFE'S NECESSARIES—MISTAKE —EVIDENCE.

Where daughter rendered services and furnished necessaries to her mother in the mistaken belief that mother's quitclaim deed to property held by herself and husband vested title in daughter because of stepfather's disappearance for many years and such deed was made under the belief he was dead, daughter's extension of credit to mother was at the daughter's peril, there being no room, under the circumstances, for jury to speculate on whether daughter would have continued to look to the property for satisfaction had she known stepfather lived and the tenancy by entireties still subsisted, and no reliance on his credit is shown.

BUSHNELL, CHANDLER, and McALLISTER, JJ., dissenting.

Appeal from Bay; McCormick (James L.), J. Submitted January 4, 1939. (Docket No. 40, Calendar No. 40,226.) Decided April 4, 1939.

Assumpsit by Helen Palmer Pritchard against Andrew S. Bigger for sums due for necessaries furnished defendant's wife. From directed verdict and judgment for plaintiff for funeral expenses only, plaintiff appeals. Affirmed.

*Samuel G. Houghton,* for plaintiff.

*Leibrand & Leibrand,* for defendant.

Bushnell, J. (*dissenting*). Defendant Andrew Bigger married Emma Bigger, the mother of plaintiff Helen Pritchard, some 53 years prior to the commencement of this action. Bigger, a sailor on the Great Lakes, would leave his home in Bay City early in the spring and generally return sometime in December, unless employed at the close of navigation as a watchman on board a ship when laid up in the winter. In 1927 he left his home in Bay City and was not seen again by plaintiff, who is his stepdaughter, until after her mother's death in 1936. Mrs. Bigger for some time was in very poor health, and her only means of livelihood was selling flowers on the streets at night. During this time she lived in her home, which she owned jointly with her husband. Mrs. Bigger's physical condition finally became so bad that plaintiff was obliged to take her into her home, where she was cared for until her death. Plaintiff lived on a 10-acre farm near Elwell in Gratiot county with her invalid husband, who was able to work only a few hours each day as a caretaker of a cemetery.

Mrs. Bigger, describing herself as the surviving wife of Andrew Smith Bigger, on August 15, 1935, conveyed the home in Bay City to plaintiff, the consideration being that plaintiff was to care for the grantor during the remainder of her life, the deed providing that Mrs. Bigger was to have as good a burial at her death as conditions would warrant. The deed also recited that the consideration included the payment of bills for doctors and nurses, if any, together with any other expenses required for the proper care, comfort, and support of the grantor.

Mrs. Pritchard did all that was humanly possible to provide for her mother's comfort and administered to her physical wants to the best of her ability under difficult circumstances, the mother's physical condition being so distressing that we do not repeat the details. Upon Mrs. Bigger's death, plaintiff and her husband mortgaged their own home in order to pay the expenses of a modest funeral for the mother.

Plaintiff sued the defendant for the reasonable value of the necessary food, clothing, nursing, care, et cetera, which she furnished her mother during her last illness, and included in her bill of particulars an item of $149.50 for funeral expenses. Defendant denied liability and admitted in his answer that, after the death of his wife, he returned to Bay City and filed a petition in the probate court of Bay county to establish his existence and his ownership of the property which Mrs. Bigger had attempted to convey to his stepdaughter. At the close of plaintiff's proofs, defendant asked the court to direct a verdict in his favor. The motion was granted with the exception of the item covering the funeral expenses, which the court properly held to be the liability of defendant. *Stone* v. *Tyack*, 164 Mich. 550. Judgment was entered for plaintiff in the sum of $153.46. In denying plaintiff's claim for the remainder of the items included in her bill of particulars, the trial court said:

"In the present case there was nothing from which it could be found that the plaintiff expected that the defendant would pay, or that either the defendant or his wife intended that he should pay, and therefore there could be no contract implied in fact. * * * The court's attention has not been called to any case wherein it is held that the husband is liable for necessaries furnished to the wife under

the circumstances of this case, under a constructive contract or one implied in law. Neither does it appear to the court that the fact that the defendant and Mrs. Bigger did not live together and that he may have abandoned her and failed to support her, change the situation as far as the law is concerned; nor does it appear to the court that the fact that the property conveyed to the plaintiff by Mrs. Bigger turned out to be property owned as tenants by the entirety and therefore there was a total or partial failure of consideration, entitles the plaintiff to recover against the defendant when there was no contract, express, implied in fact or implied in law."

It is unnecessary to discuss the elementary principle of law that a husband is liable for necessaries furnished his wife. Nor is it necessary to elaborate on the presumption that plaintiff's action in giving aid and comfort to her destitute, abandoned, and sickly mother during the unexplained absence of her stepfather was gratuitous in its nature. The attempt by Mrs. Bigger to convey property to her daughter, and particularly the language used in this conveyance, fully negatives the presumption. See *Shippee* v. *Shippee's Estate,* 255 Mich. 35, and *McInerney* v. *Detroit Trust Co.,* 279 Mich. 42.

The real question in the case is whether the deceased wife pledged her husband's credit to his stepdaughter in order to secure the necessaries of life. See *H. Leonard & Sons* v. *Stowe,* 166 Mich. 681, and annotations in 27 A. L. R. 554. If the creditor does not look exclusively to the wife for payment, the husband is generally liable, and whether or not credit was so extended raises a question of fact. *Paul* v. *Roberts,* 50 Mich. 611, and 13 R. C. L. p. 1200.

Was there sufficient evidence presented in the instant case to take this question to the jury?

· Services were rendered and necessaries were furnished by plaintiff in consideration of the conveyance of the Bay City home. It now appears that the grantor did not hold sole title to the property in question, it being then held jointly by husband and wife and is now the sole property of defendant, the survivor. These circumstances, together with the recitals in the deed, do not indicate that the services were rendered exclusively on the wife's credit.

We are unable to agree with the trial judge that defendant was entitled to a directed verdict. We decline to hold, as a matter of law, that a creditor looks exclusively to a wife for payment when credit is extended in consideration of the conveyance of property in which the husband has an interest. This situation presents a question of fact rather than one of law.

We are not unmindful of defendant's argument that plaintiff looked solely to her mother's property for reimbursement. However, she testified, "I always knew she and Mr. Bigger were joint owners of the house and lot." Also, a bill for divorce was pending when Mrs. Bigger died. Plaintiff's proofs are not entirely consistent; nor did Mrs. Bigger have the ability to secure proper legal advice on all occasions.

Taking plaintiff's proofs in the most favorable light, as we must in reviewing a directed verdict for defendant, we believe there was sufficient evidence presented to enable a jury to find that Mrs. Bigger pledged her husband's credit in order to secure the necessaries of life. At least plaintiff was entitled to go to the jury on this question.

The judgment for defendant, entered upon the directed verdict, should be set aside and a new trial ordered.

Chandler and McAllister, JJ., concurred with Bushnell, J.

Butzel, C. J. This is a hard case but it should not be permitted to make bad law. I am constrained to hold that defendant's motion for directed verdict was properly granted by the court below.

I agree that the sole question to be determined is whether Mrs. Bigger pledged defendant's credit to plaintiff in order to secure for herself the necessaries of life. Since the spouses were not residing together at the time, the presumption that the wife was authorized to pledge her husband's credit cannot obtain. *People* v. *Kellogg,* 205 Mich. 482. The rule is also laid down in Williston, Contracts (Rev. Ed.), § 270, and supported by many decisions cited in the footnote, that apart from statutory law, if it exists (and it does not exist in Michigan), "If credit is in fact given to the wife, no one else will be liable even though the circumstances were such that she might have pledged her husband's credit."

It is obvious that plaintiff did not rely on any express or implied promise of defendant to pay for the goods and services furnished his wife, since both plaintiff and her mother believed defendant was dead. It is true that plaintiff consulted an attorney for her mother who subsequently signed a bill for divorce from defendant, but we do not know what was in Mrs. Bigger's mind at the time. This suit was brought after her death. It is possible, and there are statements in the record which tend to confirm this, that since there was no positive evi-

dence of defendant's death except his disappearance many years before, it was thought advisable to have a judicial decree through divorce proceedings which awarded and vested in Mrs. Bigger the title to the entirety property. Plaintiff expressly testified that

"At the time I came here to talk about divorce, I believed Mr. Bigger dead and thought so for many years."

Even when her mother died, plaintiff testified that she did not notify defendant because she believed him dead.

In the foregoing opinion it is stated, however, that plaintiff furnished the goods and services "in consideration of the conveyance of the Bay City home." For that reason, it is further argued that after the entire credit had been extended and the wife had died, and it then for the first time appeared that the property did not belong exclusively to the wife, it must follow that the credit was extended to the husband. The doctrine that a husband may be liable for necessaries furnished his wife where his credit has been pledged has been long and frequently applied; it is significant that no case has been found which recognizes any theory of "extension of credit" specifically on the basis of a husband's property, particularly where the claimant believed it was owned by another and that the husband was dead.

Even assuming that credit might be extended "in consideration of" the husband's property, I find nothing in the record to justify the conclusion that plaintiff in any way relied on defendant's interest in the property when supplying necessaries to her mother. The quitclaim deed, which attempted to convey the property, rather than revealing such re-

liance, conclusively shows that defendant's interest in the home was not considered. The deed ran from "Emma Bigger, surviving wife of Andrew Smith Bigger," to plaintiff, and recited that the "grantee above-named agrees to care for said grantor during the remainder of her lifetime both in sickness and in health and at her, grantor's death, to give her as good a burial as the conditions will warrant; that this shall include the payment of doctors' and nurse's bills, if any, together with any other expense required for the proper care, comfort and support of said Emma Bigger."

Manifestly, both mother and daughter believed that Bigger was dead and that the property belonged exclusively to the mother. In that event, no question of fact remains to be tried by a jury. The fact of reliance is to be determined from the conditions and circumstances existing at the time the credit was extended. Where no reliance on defendant's credit at that time is shown, there is no room for the jury to speculate on whether plaintiff would have continued to look to the property for satisfaction had she known that defendant was alive and the tenancy by entireties still subsisted. Such hypothetical considerations are wholly foreign to the single issue of whether she relied on defendant's credit while in ignorance of the fact that defendant was still alive and such tenancy by the entireties still subsisted. Viewed most favorably to plaintiff, her own testimony establishes no more than that she knew the property was jointly held by husband and wife; that she long believed the husband was dead; and that she rendered services and furnished necessaries to the wife in the mistaken belief that the wife's quitclaim deed to the property vested title in herself. I cannot agree that this establishes a *prima*

*facie* case against defendant.   The extension of credit under such circumstances must be held, not without reluctance, to have been at the peril of the creditor.   Cf. *Clark* v. *Cox,* 32 Mich. 204; *Leonard & Sons* v. *Stowe,* 166 Mich. 681; *Taylor* v. *Shelton,* 30 Conn. 122; *Connerat* v. *Goldsmith,* 6 Ga. 14.

The holding of the court that defendant was liable for the funeral expenses of Mrs. Bigger need not be discussed since defendant took no cross-appeal.

Judgment is affirmed, with costs to defendant.

WIEST, SHARPE, POTTER, and NORTH, JJ., concurred with BUTZEL, C. J.