NORTH OTTAWA COMMUNITY HOSPITAL v KIEFT

Docket No. 105156. Argued March 4, 1998 (Calendar No. 12). Decided
    May 19, 1998.

   North Ottawa Community Hospital brought an action in the Ottawa
   Circuit Court against Barbara Kieft, seeking payment for health
   care services provided to her husband before his death. The court,
   Wesley J. Nykamp, J., granted summary disposition for the plaintiff,
   holding that under *Borgess Medical Center v Smith*, 149 Mich App
   796 (1986), a wife is liable for the medical necessities of her hus-
   band. The Court of Appeals, M. J. KELLY and A. J. FERRARA, JJ.
   (MARKEY, P.J., concurring in the result only), affirmed in an opinion
   per curiam, ruling the married women's property act, MCL
   557.21(1); MSA 26.165(1)(1), to be unconstitutional (Docket No.
   173302). The defendant appeals.

   In a unanimous opinion by Justice BRICKLEY, the Supreme Court
   *held*:

   Neither a husband nor a wife is liable, absent express agreement,
   for necessaries supplied to the other. The married women's prop-
   erty act, MCL 557.21(1); MSA 26.165(1)(1), is constitutional and
   bars the judgment against the defendant for her husband's medical
   expenses. The common-law necessaries doctrine violates equal pro-
   tection principles and is abrogated.

   The expansion of the common-law necessaries doctrine in *Bor-
   gess* to impose liability on wives for their husbands' medical neces-
   sities was inappropriate because it is specifically precluded by MCL
   557.21(1); MSA 26.165(1)(1) and Const 1963, art 10, § 1. Article 10,
   § 1 and the final sentence of MCL 557.21(1); MSA 26.165(1)(1) are
   constitutional in light of the equal protection guarantees provided
   under both Const 1963, art 1, § 2 and the Fourteenth Amendment
   of the United States Constitution. Each, on its own, forms a gender-
   neutral scheme under which each spouse is independent of the
   other. The provisions have the purpose and effect of relieving mar-
   ried women of the disabilities of coverture and place them on an
   equal footing with respect to contract and property rights with
   unmarried women and men, promoting, rather than hindering, eco-
   nomic equality.

   Reversed and remanded.

214 Mich App 518; 543 NW2d 37 (1995) reversed.
*Borgess Medical Center v Smith,* 149 Mich App 796; 386 NW2d 684 (1986), overruled in part.

*Bussard & Sielski* (by *James W. Bussard*) for the defendant-appellant.

Amicus Curiae:

*Robert E. Butcher* for Barbara Kieft.

BRICKLEY, J. Defendant Barbara Kieft, whose deceased husband David received medical services from plaintiff North Ottawa Community Hospital, appeals the circuit court's grant of summary disposition for plaintiff in its collection action against her. She defends this action on the basis of a provision of the married women's property act (MWPA),[1] which the Court of Appeals found to be unconstitutional.

For the reasons that follow, we find that the MWPA is constitutional and that it bars a judgment against Ms. Kieft for her husband's medical expenses. Consistent with our findings today, we abrogate the common-law doctrine of necessaries and hold that neither a husband nor a wife is liable, absent express agreement, for necessaries supplied to the other. The deci-

---

[1] The pertinent provision states:

If a woman acquires real or personal property before marriage or becomes entitled to or acquires, after marriage, real or personal property through gift, grant, inheritance, devise, or other manner, that property is and shall remain the property of the woman and be a part of the woman's estate. She may contract with respect to the property, sell, transfer, mortgage, convey, devise, or bequeath the property in the same manner and with the same effect as if she were unmarried. *The property shall not be liable for the debts, obligations, or engagements of any other person, including the woman's husband, except as provided in this act.* [MCL 557.21(1); MSA 26.165(1)(1) (emphasis added).]

sion of the Court of Appeals is reversed, and we remand this case to the circuit court for entry of judgment in favor of defendant.

I

Barbara Kieft and David Kieft were a married couple. David received health care services from North Ottawa Community Hospital and, upon his death, left an insolvent estate. The hospital attempted to recover from Ms. Kieft the unpaid hospital charges, which amounted to $22,191.81. From the materials at hand, it appears that the parties agree that Ms. Kieft did not contract for David's care, nor did she agree to guarantee payment for his care.

To recover the outstanding debt, North Ottawa brought this suit against Ms. Kieft. In its complaint, North Ottawa stated that Ms. Kieft had "a common law and/or statutory obligation to pay for necessaries and/or support of the parties." Ms. Kieft answered that "she has no duty and has never assumed the obligation of paying for the services rendered to David Kieft."

North Ottawa moved for summary disposition, pursuant to MCR 2.116(C)(9), (10). Noting Ms. Kieft's denial of an obligation to pay for Mr. Kieft's health care expenses, North Ottawa stated in its motion that "it is well established Michigan law, that each spouse is obligated to pay for the medical necessaries rendered to the spouse, if they were rendered during the marriage." An accompanying brief cited *Borgess Medical Center v Smith*, 149 Mich App 796; 386 NW2d 684 (1986), and *Bronson Methodist Hosp v LaRoy*, 171 Mich App 729; 430 NW2d 817 (1988), as authority for

the obligation of the wife to pay the debts of the husband.

The circuit court granted summary disposition, finding that "pursuant to *Borgess* at 801, this Court must hold that the wife is liable for the medical necessities of her husband." The court then entered judgment in favor of North Ottawa for the full $22,191.81, plus costs and interest.

The Court of Appeals affirmed, ruling that the MWPA is unconstitutional, and held Ms. Kieft liable for her husband's medical necessities. 213 Mich App 518; 543 NW2d 37 (1995). We granted leave to appeal.[2]

II

This appeal presents three separate but interrelated questions. First, does the MWPA (and a related provision in the Michigan Constitution) preclude North Ottawa from recovering from Ms. Kieft health care expenses incurred by her deceased husband? Second, if the provisions bar judgment against Ms. Kieft for her husband's debts, are those provisions violative of the Equal Protection Clauses of the Michigan and federal constitutions? Finally, in light of equal protection considerations, does the common-law necessaries doctrine remain valid?

A

It is well known that the common law imposed significant economic disabilities on married women, and that property rights of women in Michigan were virtu-

---

[2] After oral argument was ordered, briefs were submitted by defendant-appellant Barbara Kieft, and amicus curiae in support of Ms. Kieft's position. The clerk advises that no brief was submitted by plaintiff-appellee North Ottawa.

ally nonexistent before the enactment of married women's property acts. *Burdeno v Amperse*, 14 Mich 91 (1866), and *Tong v Marvin*, 15 Mich 60 (1866). At common law, a married woman, by her coverture,[3] enjoyed no individual rights pertaining to the property she may have owned before the marriage or acquired during the marriage. The state of coverture was virtually a legal disability whereby a woman lost the capacity to contract, sue, or be sued individually. "In short, [coverture] stripped a married woman of virtually all means of self-support." *Bartrom v Adjustment Bureau, Inc*, 618 NE2d 1, 3 (Ind, 1993).[4]

In an apparent effort to place married women on a more equal footing with single women, the Michigan Legislature abrogated some of the harsh features imposed on women at common law by enacting a series of married women's property acts. The acts included enlarging married women's property and contractual rights, thereby removing some of the disabilities of coverture.[5] In 1981, the Legislature enacted the most recent version of the MWPA, declaring that a wife's separate property is not subject to her husband's debts:

---

[3] Coverture is defined as "[t]he condition or state of a married woman. Sometimes [it is] used elliptically to describe the legal disability which formerly existed at common law from a state of coverture . . . ." Black's Law Dictionary (6th ed), p 366.

[4] See, generally, Salmon, Women and the Law of Property in Early America (Chapel Hill: Univ of North Carolina Press, 1986).

[5] See 1855 PA 168, 1911 PA 196, 1917 PA 158, and 1981 PA 216. Although there is a paucity of published research addressing the motives behind the development of married women's property acts, they seem to have been a product of the women's suffrage movement. See Kanowitz, Women and the Law, p 40; Johnston, *Sex and property: The common law tradition, the law school curriculum, and developments toward equality*, 47 NYU L R 1033, 1062 (1972).

> If a woman acquires real or personal property before marriage or becomes entitled to or acquires, after marriage, real or personal property through gift, grant, inheritance, devise, or other manner, that property is and shall remain the property of the woman and be a part of the woman's estate. She may contract with respect to the property, sell, transfer, mortgage, convey, devise, or bequeath the property in the same manner and with the same effect as if she were unmarried. *The property shall not be liable for the debts, obligations, or engagements of any other person, including the woman's husband, except as provided in this act.* [MCL 557.21(1); MSA 26.165(1)(1) (emphasis added).]

A later provision in the same act empowers a married woman to contract, but specifies that she may be sued separately on her contracts and that a husband is not liable upon any contract made by his wife "unless the husband acted as a surety, co-signor [sic], or guarantor on the contract." MCL 557.24(2); MSA 26.165(4)(2).

Advancing notions of equity are also reflected in the last three constitutions adopted by the people of Michigan, with the most recent providing:

> The disabilities of coverture as to property are abolished. The real and personal estate of every woman acquired before marriage and all real and personal property to which she may afterwards become entitled shall be and remain the estate and property of such woman, *and shall not be liable for the debts, obligations or engagements of her husband,* and may be dealt with and disposed of by her as if she were unmarried. Dower may be relinquished or conveyed as provided by law. [Const 1963, art 10, § 1 (emphasis added).][6]

---

[6] In the past, there has been some question whether the MWPA remains viable in light of the constitutional language which provides that "[t]he disabilities of coverture . . . are abolished." See *City Finance Co v Kloostra*, 47 Mich App 276; 209 NW2d 498 (1973), and *Michigan Nat'l*

Although the foregoing provisions of the MWPA and the Michigan Constitution enlarged rights and removed disabilities imposed on married women at common law, the common-law necessaries doctrine, which essentially makes husbands liable for necessities that are provided to their wives, has remained unmodified in this state. See *Pritchard v Bigger*, 288 Mich 447, 450; 285 NW 17 (1939) (opinion of BUSHNELL, J.), *In re LaFreniere's Estate*, 323 Mich 562, 564; 36 NW2d 147 (1949), *Detroit v Eisele*, 362 Mich 684, 686; 108 NW2d 763 (1961).[7] The doctrine, which attempted to "obviate some of the victimization which coverture would otherwise have permitted," has been characterized as providing a common-law "mechanism by which the duty of support could be enforced." *Bartrom*, 618 NE2d 3.

Recently, creditors and husbands in a number of states, including Michigan, have asserted a constitutional equal protection challenge to the necessaries doctrine, demanding reexamination of the doctrine's modern viability. As noted above, at common law, the doctrine imposed liability only on the husband for his family's necessaries, while not recognizing a recipro-

---

*Leasing Corp v Cardillo*, 103 Mich App 427; 302 NW2d 888 (1981). We granted leave to appeal this question in *Cardillo*, but later granted reconsideration, saying, "It appearing that this case is not jurisprudentially significant in view of the enactment of 198[1] PA 216, the [grant] order is vacated and leave to appeal is denied." 412 Mich 857, 858 (1982). We find art 10, § 1 of the constitution to be a clear expression that all the *disabilities* of coverture are abolished. Our examination of the remaining language in art 10, § 1 leads us to the conclusion that the Legislature retains the ability to enact *statutory* measures directed toward ensuring the abrogation of those disabilities of coverture. Such statutes are subject, of course, to a constitutional analysis under other provisions, such as equal protection.

[7] Medically necessary expenses have been characterized as "necessaries" within the spirit of the doctrine. *Eisele, supra* at 686.

cal liability on the part of the wife for the husband's necessaries, with the primary purpose being to assure that dependent wives received support from neglectful husbands. Note, *The unnecessary doctrine of necessaries,* 82 Mich L R 1767 (1984). This gender-discriminatory application has more recently resulted in the abrogation of the doctrine in some states, *Condore v Prince George's Co,* 289 Md 516; 425 A2d 1011 (1981); *Schilling v Bedford Co Memorial Hosp,* 225 Va 539; 303 SE2d 905 (1983), while other states have expanded the doctrine to apply equally or quasi-equally to both spouses. *North Carolina Baptist Hosps v Harris,* 319 NC 347; 354 SE2d 471 (1987); *Jersey Shore Medical Center-Fitkin Hosp v Baum Estate,* 84 NJ 137; 417 A2d 1003 (1980).

B

The common-law necessaries doctrine was squarely before our Court of Appeals in *Borgess Medical Center, supra.* In that case, a married man without assets died in 1983, and Borgess Medical Center sued his widow for the cost of medical services provided to him. After noting that the MWPA made it clear that a wife is not responsible for her husband's debts, the *Borgess* Court suggested that it was time for a change in the law, referencing *Jersey Shore Medical Center, supra,* in which the New Jersey Supreme Court held both spouses liable for each other's necessaries on the basis of the court's view of marriage as a partnership. The *Borgess* Court stated:

> In *Jersey Shore Medical Center-Fitkin Hospital v Estate of Baum,* 84 NJ 137; 417 A2d 1003 (1980), the New Jersey Supreme Court found that the New Jersey Married Woman's

Act, NJSA 37:2-15, if read literally, would bar liability for either spouse for the medical debts of the other.

While there is no Michigan case addressing this issue, several cases have emerged from our sister states within the last 25 years on this subject. In holding that a married woman is responsible for her husband's medical necessities, the *Jersey Shore* Court relied upon *Orr v Orr*, 440 US 268; 99 S Ct 1102; 59 L Ed 2d 306 (1979) (where the United States Supreme Court held that a statute under which husbands, but not wives, might be ordered to pay alimony violated the equal protection clause of the Fourteenth Amendment). If it is true, as plaintiff asserts, that the New Jersey statute did not bar the court from finding the wife liable for her husband's medical expenses, the New Jersey Supreme Court would not have found it necessary to rely upon constitutional considerations but would have merely changed the common law. [149 Mich App 798-800.]

From there, the Court embarked on a discussion that apparently served both to expand the common law to give wives the responsibility of paying the medical expenses of husbands, and effectively to hold the statute unconstitutional. However, the discussion of the constitutional question was, at best, indirect:

In *Manatee Convalescent Center, Inc v McDonald*, 392 So 2d 1356, 1357 (Fla App, 1980), the Second District Court of Appeals stated in part:

"The law is not static. It must keep pace with changes in our society, for the doctrine of stare decisis is not an iron mold which can never be changed."

\*    \*    \*

The *Manatee* Court concluded:

"Changing times demand reexamination of seemingly unchangeable legal dogma. Equality under law and even handed treatment of the sexes in the modern market place must also carry the burden of responsibility which goes with the benefits." 392 So 2d 1358.

> We find the law from our sister states to be persuasive
> and, therefore, we hold that a wife is liable for the medical
> necessaries of her husband. The question still remaining is
> what remedy should this Court provide. We do not think
> that it is equitable in this case to hold the defendant liable
> where both the plaintiff and the defendant have relied on
> prior law (when the expense was incurred) which we have
> changed today to keep pace with the changes in society.[8]
> We adopt this principle prospectively so that it applies only
> to debts incurred after the date of this decision. [*Borgess
> Medical Center*, 149 Mich App 800-801.]

After reviewing the New Jersey case on which *Borgess Medical Center* primarily relied, it is evident that the Court was attempting to explain its expansion of the common law.[9]

C

Relying on analysis from *Borgess*, the Court of Appeals in the present case held the MWPA to be unconstitutional and found defendant Barbara Kieft liable for her husband's medical necessities. The anal-

---

[8] With its reference to "prior law . . . which we have changed today to keep pace with the changes in society," the Court of Appeals implied that it was changing the common law. However, in the context of the whole opinion, it appears that the Court not only expanded the necessaries doctrine, but also found the statute to be unconstitutional in part.

[9] Two years later, our Court of Appeals in *Bronson Hosp, supra*, although acknowledging the *Borgess* holding, held that the defendant wife did not have to pay medical expenses incurred by her husband because the expenses were incurred before the effective date of *Borgess*. The *Bronson* panel criticized the *Borgess* holding, stating that "[a]lthough a change in the common law is needed, this is neither the time nor the place. This is an issue for the Legislature and not the judiciary." *Id.* at 732. Although we agree that the necessaries doctrine is an issue better addressed by the Legislature, see n 14, we note that it is unquestioned that the judiciary has the power to determine whether a statute violates the constitution. Likewise, it is axiomatic that our courts have the constitutional authority to change the common law in the proper case. *Placek v Sterling Heights*, 405 Mich 638, 656-657; 275 NW2d 511 (1979).

ysis is brief. After summarizing the history of this case and noting the decision in *Borgess*, the majority stated:

> Article 1, § 2 of the Michigan Constitution of 1963, as well as the Fourteenth Amendment of the United States Constitution provides for equal protection of the law. The Court in *Borgess Medical Center, supra*, concluded by necessary implication that the married women's property act is unconstitutional. We agree. [214 Mich App 520.]

Beyond "[w]e agree," the majority did not explain its conclusion that *Borgess* correctly found the statute to be unconstitutional.[10]

### III

In the present case, Ms. Kieft argues that the *Borgess* Court's expansion of the necessaries doctrine imposing liability on wives was inappropriate because such an extension of the common law is specifically precluded by statute and the Michigan Constitution. We agree. The final sentence of MCL 557.21(1); MSA 26.165(1)(1) expressly indicates that such an obligation cannot be imposed:

> If a woman acquires real or personal property before marriage or becomes entitled to or acquires, after marriage, real or personal property through gift, grant, inheritance, devise, or other manner, that property is and shall remain the property of the woman and be a part of the woman's estate. She may contract with respect to the property, sell,

---

[10] Judge MARKEY added a short concurrence:

This issue was squarely addressed by the holding in *Borgess Medical Center v Smith*, 149 Mich App 796, 801; 386 NW2d 684 (1986).

Accordingly, I concur in the result only. [214 Mich App 520.]

transfer, mortgage, convey, devise, or bequeath the property in the same manner and with the same effect as if she were unmarried. *The property shall not be liable for the debts, obligations, or engagements of any other person, including the woman's husband, except as provided in this act.* [Emphasis added.]

As spelled out above, the language in art 10, § 1 of the Michigan Constitution provides similar protection. We overrule *Borgess* to the extent that its expansion of the necessaries doctrine, imposing a corresponding obligation on wives, is inconsistent with both the MWPA and the Michigan Constitution.

IV

We now reach the principal question presented in this appeal, namely, whether art 10, § 1 of the Michigan Constitution and the final sentence of MCL 557.21(1); MSA 26.165(1)(1) are constitutional in light of the equal protection guarantees provided under both art 1, § 2 of the Michigan Constitution and the Fourteenth Amendment of the United States Constitution.[11]

The United States Supreme Court has held that, for a gender-based classification to pass constitutional muster, it must serve an important governmental objective and be substantially related to the achievement of that objective. *Califano v Webster*, 430 US 313, 317; 97 S Ct 1192; 51 L Ed 2d 360 (1977), quoting *Craig v Boren*, 429 US 190, 197; 97 S Ct 451; 50 L Ed 2d 397 (1976). Employing this standard, the Supreme Court has overturned statutory gender classifications

---

[11] Our state constitution provides equal protection guarantees similar to those contained in the United States Constitution. *Doe v Dep't of Social Services*, 439 Mich 650, 672; 487 NW2d 166 (1992).

where the state's purpose could be achieved by gender-neutral regulation. *Orr v Orr*, 440 US 268; 99 S Ct 1102; 59 L Ed 2d 306 (1979) (a state statute allowing alimony for wives, but not for husbands, was held invalid). However, the Court has also upheld a gender-discriminatory classification if necessary to compensate for past gender discrimination. *Kahn v Shevin*, 416 US 351; 94 S Ct 1734; 40 L Ed 2d 189 (1974) (a Florida statute granting widows, but not widowers, a property tax exemption was upheld because the state's objective to cushion widows' greater financial difficulties was held constitutionally valid).

We find that both art 10, § 1 of the Michigan Constitution and the MWPA, on their own, form a gender-neutral scheme under which each spouse is independent of the other. On their faces, the provisions state an unremarkable proposition: A married woman is not liable for a contract to which she is not a party. As indicated above, these provisions have the purpose and effect of relieving married women of the disabilities of coverture and place them on an equal footing with respect to contract and property rights with both unmarried women and men. Accordingly, we find that these provisions are designed to promote, rather than hinder, economic equality.[12]

---

[12] We find support for our determination on this point in the House Legislative Analysis of 1981 PA 216, which makes clear that the intent of the bill was to harmonize and update earlier versions of the MWPA:

Ideally, individuals of either gender should have equal legal rights and responsibilities, regardless of marital status. However, since the legislature cannot pass a blanket statute to abolish common law, some people say that the most effective way to correct the present inequalities would be to replace the Married Women's Property Acts with a more comprehensive statute which would

In light of the foregoing, we are satisfied that the MWPA and art 10, § 1 of the Michigan Constitution are not violative of the Equal Protection Clauses of the Michigan and federal constitutions. To the extent that it held otherwise, *Borgess, supra,* is overruled. As explained above, for historical reasons, there was greater need to legislate the economic equality of women, and, therefore, the absence of corresponding provisions (other than the provision protecting the property of married men, MCL 557.24[2]; MSA 26.165[4][2]) regarding the economic status of men is readily explainable on that basis.

However, the enforcement of the provisions under review today may cause a disparate effect on married men if a court were to apply the common-law necessaries doctrine that holds a husband liable for the necessary medical expenses of his wife.[13] There is no question that, when applied to married men only, the necessaries doctrine qualifies as gender-based discrimination and offends the principle of equal protection of the law. Clearly, the underlying governmental objective of the common-law doctrine was to provide for a dependent wife who surrendered all her property rights to her husband at the time of marriage. Thus, the common-law necessaries doctrine imposing

---

assure married women of the same legal status as men and unmarried women. [House Legislative Analysis, HB 4098, May 12, 1981, p 1.]

[13] Although the MWPA contains a provision protecting a *husband* from liability for contracts separately entered into by his wife, MCL 557.24(2); MSA 26.165(4)(2), we believe that language is not sufficient to abrogate the common-law doctrine of necessaries. Rather, we find that provision contemplates the exemption of liability for the voluntary contracts of a spouse and, therefore, does not pertain to the necessaries doctrine, which creates a unilateral obligation of support directly between the husband and the third party who has provided services.

the support burden only on a husband could be justified in the past because it was substantially related to the important governmental objective of providing necessary support to dependent wives. However, the contemporary reality of women owning property, working outside the home, and otherwise contributing to their own economic support calls for the abrogation of this sex-discriminatory doctrine from early common law.[14]

V

We find that the provisions of the MWPA and Michigan Constitution under review today preclude North Ottawa from recovering from Ms. Kieft health care expenses incurred by her deceased husband. We also find that these provisions do not violate the Equal Protection Clauses of the Michigan and federal constitutions. However, as traditionally formulated, the common-law necessaries doctrine violates equal protection principles, and we remedy this unconstitutionality by abrogating the doctrine, holding that neither a husband nor a wife is liable, absent express agreement, for necessaries supplied to the other. We

---

[14] In light of our determination that the common-law necessaries doctrine is controlled by MCL 557.21(1); MSA 26.165(1)(1) and Const 1963, art 10, § 1, we cannot remedy the doctrine's equal protection violation by extending liability to both wives and husbands. We therefore abolish the doctrine altogether and await the judgment of the Legislature regarding which is the better policy for the state to adopt. We recognize that virtually all the necessaries doctrine cases will concern hospitals seeking to collect debts resulting from medical services rendered to spouses, often during a last illness. The public policy issues surrounding these circumstances are complex, and we think that such issues are best taken up by the Legislature in family-expense statutes, creditors' rights laws, or even comprehensive health care legislation. See *Connor v Southwest Florida Regional Medical Center*, 668 So 2d 175, 176 (Fla, 1995); *Condore, supra* at 531-532; *Schilling, supra* at 543-544.

reverse the decision of the Court of Appeals and remand this case to the circuit court for entry of judgment in favor of defendant.

MALLETT, C.J., and CAVANAGH, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred with BRICKLEY, J.