# STATE OF MICHIGAN

# COURT OF APPEALS

VIRGINIA M. CAPPAERT,

Plaintiff-Appellant,

v

DAVID S. CAPPAERT,

Defendant-Appellee.

UNPUBLISHED
October 24, 2017

No. 335303
Menominee Circuit Court
LC No. 15-015000-DM

Before: K. F. KELLY, P.J., and BECKERING and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right from a judgment of divorce. On appeal, plaintiff challenges the trial court's characterization and valuation of various items of property, the characterization of certain debts, and its decision to condition defendant's exercise of a right of first refusal on a sale of the marital home on defendant obtaining an appraisal and paying the appraised fair market value of the property. We affirm in part, reverse in part, and remand for further proceedings.

## I. VALUATION OF PLAINTIFF'S ART

Plaintiff first argues that the trial court erred in its valuation of plaintiff's art inventory. We review a trial court's valuation of assets in a divorce proceeding for clear error. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992). A finding is clearly erroneous when, after reviewing the record, we are left with a "definite and firm conviction that a mistake has been made." *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997). "This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses." *Id*.

Plaintiff argues that the trial court erred in relying on the retail sales prices for the art pieces to arrive at a valuation of her art inventory. She notes that several of the art pieces are on consignment, which subjects the sale price to a 50-percent commission, and that the art sold in her gallery pays the cost to operate her art studio. Plaintiff maintains that the trial court should have valued her unsold art pieces at the cost of the materials used to produce each piece.

In resolving a dispute over the value of a business "the trial court has great latitude in arriving at a final figure." *Pelton v Pelton*, 167 Mich App 22, 26; 421 NW2d 560 (1988); see also *Jansen v Jansen*, 205 Mich App 169, 170-171; 517 NW2d 275 (1994). "[W]here a trial

-1-

court's valuation of a marital asset is within the range established by the proofs, no clear error is present." *Jansen*, 205 Mich App at 171. A "trial court may, but is not required to, accept either party's valuation evidence." *Pelton* 167 Mich App at 25.

The trial court did not clearly err by failing to value the artwork solely as "the cost of the materials to produce the art pieces," as plaintiff argues on appeal. This would totally discount the value added by plaintiff's artistic talent. No one testified that plaintiff would be willing to sell the art pieces for the cost of the materials. To the contrary, the parties' tax returns showed that plaintiff sold them for much more. The absurdity of plaintiff's position is well illustrated by her expert's testimony when asked, "So if I have a Renoir at my house and I don't currently have it for sale is it worth only the canvass and the colors on the painting?" Plaintiff's expert answered, "[I]t's probably worth what you paid for it."

The trial court also did not clearly err by failing to reduce the value of the completed artwork pieces by 47.9 percent to reflect the costs of the materials used to create the pieces. At the time the pieces were valued for purposes of the divorce, these costs had already been effectively borne by the parties together; plaintiff would not have to subtract this amount from a future sale. To conclude otherwise would be akin to valuing a home by subtracting the cost of the building materials that had already been used to create it. Moreover, while plaintiff's expert stated that she arrived at the 47.9 percent figure from reviewing plaintiff's tax returns, plaintiff's spreadsheet to the trial court listed the "cost of materials of those paintings" as much lower, namely, $4,708 in costs for the calculated $204,330 in artwork.

Plaintiff's comparison of the art pieces to the parties' farm crops is also unpersuasive. Plaintiff argues that, similar to defendant's testimony that he could not determine the worth of the crops from the spring planting due to possible losses from rain or drought, "[t]he value of the art inventory cannot be reasonably ascertained due to circumstances beyond plaintiff's control [sic] market, fad, and fashion." This analogy is inapt because it attempts to compare factors affecting a product's market value with factors affecting the product's creation or existence in the first instance. Unlike possible crop loss due to weather, the art pieces still physically exist, irrespective of outside forces. With either asset, outside influences may later affect the product's market value, but that does not alter the trial court's responsibility of assigning a value to the asset at the time of divorce.

Similarly, while plaintiff makes much of the fact that she might only be able to sell 30 percent of her inventory each year, she will still retain control of the other 70 percent. In addition, although she had sold some of her art pieces at other galleries for which she was liable for a commission, she was free to offer pieces only at her own gallery and retain the full sales price. And although some pieces might never sell, or could only be sold at a gallery other than her own, the trial court appeared to take this into account when it reduced the reported inventory by 20 percent to arrive at a valuation of the property.

In sum, plaintiff has not shown that the trial court clearly erred in valuing the art inventory at $265,032. Plaintiff's testimony supported the initial valuation of $331,290 for her art inventory, and the trial court arrived at a similar figure through reviewing plaintiff's gross revenue of $105,511 for 2015 and using the testimony concerning the percentage of artwork an artist could expect to sell each year to find that plaintiff's inventory would have had a value of

more than $300,000 for 2015. Plaintiff's appellate position concerning valuation is clearly unreasonable. Plaintiff does not specifically challenge the 20-percent reduction calculation applied by the trial court as factually erroneous or otherwise unreasonable. For these reasons, we reject this claim of error.

## II. CONSIDERATION OF FUTURE CAPITAL GAINS TAX LIABILITY

Plaintiff next argues that the trial court erred by reducing its valuation of the parties' farm by $216,700 to represent the future capital gains tax burden defendant would be subject to upon sale of the farm. We disagree.

In *Butler v Simmons-Butler*, 308 Mich App 195, 213; 863 NW2d 677 (2014), this Court recognized that a trial court properly may consider tax consequences when dividing marital property, stating:

> There are Michigan cases highlighting the fact that trial courts often take tax consequences into consideration when fashioning the ultimate equitable distribution of marital property. See, e.g., *Friend v Friend*, 486 Mich 1035; 783 NW2d 122 (2010) (recognizing that uniform spousal support orders take into consideration the tax consequences of payments); *Clarke v Clarke*, 297 Mich App 172, 188; 823 NW2d 318 (2012) (stating that trial courts can order which parent may claim the federal dependency tax exemption); *Nalevayko v Nalevayko*, 198 Mich App 163, 164; 497 NW2d 533 (1993) (generally recognizing that courts may consider the effects of taxation in distributing assets so long as it is not speculative); *Everett v Everett*, 195 Mich App 50, 55; 489 NW2d 111 (1992) ("[T]he trial court erred in valuating the [stock] options without taking into consideration the tax consequences."). Clearly, then, circuit courts often consider tax implications in a variety of contexts so as to ensure that they are accurately determining the value of assets and equitably distributing marital estates.

Plaintiff does not argue that the calculated capital gains tax liability was erroneous. Plaintiff instead argues that the trial court should not have considered the capital gains tax liability upon defendant's sale of the farm because it was speculative that he would ever sell the farm. However, defendant testified that he did intend to sell the farm in the future, and that none of the parties' children were currently interested in taking it over. He also testified that he did not have any other retirement assets. Given this testimony, and the trial court's role in deciding issues of witness credibility, *Draggoo*, 223 Mich App at 415, plaintiff has not shown that the trial court clearly erred in finding that defendant was reasonably likely to sell the property in the future, and thereby incur a significant capital gains tax liability.

Plaintiff's other argument, that the tax laws may change in the future and thus the trial court should not have taken tax consequences into account, is without merit. Accepting plaintiff's position would have invited speculation on the part of the court.

On appeal, plaintiff also argues that the trial court could have instead ordered the farm sold or left the parties "a fifty percent interest in the farm to dispose of as they choose," apparently to argue that no capital gains tax would occur if each party then passed their interest

to the children. However, the fact that there were other options for dividing this asset does not establish that the option chosen by the trial court was inequitable. In any event, neither party expressed an interest in becoming business partners; thus, the trial court's rejection of this option was not unreasonable. Also, one of the proposed alternatives suggested by plaintiff counsel's was to reduce the total amount of future capital gains tax liability by half, presumably to reflect the portion of these taxes that would be borne by defendant if the property was instead ordered sold and the proceeds divided between the parties. The trial court's decision to agree with counsel's logic and thus credit defendant for only half of the calculated tax liability was thus not unreasonable.

### III. CHARACTERIZATION OF PREMARITAL PROPERTY

Plaintiff next argues that the trial court erred by treating her entire Wisconsin retirement account as marital property before awarding it to plaintiff. Plaintiff argues that her premarital contributions to the account were her separate property, not subject to division as part of the marital estate.

A "trial court's first consideration when dividing property in divorce proceedings is the determination of marital and separate assets." *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). As a general principle, marital property is property acquired or earned during the marriage, while separate property is obtained or earned before the marriage. *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). However, separate assets acquired before marriage become part of the marital estate "if they are commingled with marital assets and treated by the parties as marital property." *Id.* (quotation marks and citation omitted). Generally, marital assets are subject to division between the parties, but the parties' separate assets may not be invaded. *Woodington v Shokoohi*, 288 Mich App 352, 358; 792 NW2d 63 (2010).

Plaintiff's testimony, even considered in conjunction with her proffered January 1, 2016 statement of benefits for the retirement account, does not establish that the trial court clearly erred when it failed to categorize any of plaintiff's retirement account funds as her separate property. With respect to this account, plaintiff testified only that she had a total of 8.44 years of participation in the pension system before 2000, and that three years of participation occurred before her marriage to defendant. The exhibit also states that plaintiff had 8.44 years of service credit. It lists a total employee contribution, as of January 1, 2016, of $24,608.97, with "matching employer contributions" of the same amount, for a total of $49,217.86. According to the exhibit, however, the increase from January 2015 to January 2016 was due solely to a five-percent interest payment of $1,171.86 for plaintiff's contributions, or $2,343.72 total. The report also lists plaintiff's three highest earning years as 1992, 1995, and 1994, all of which occurred after the parties married in February 1991. In addition, plaintiff did not earn the same for those three years.

Given this information, plaintiff's calculation appears to have been based on an incorrect premise and is obviously factually incorrect. For example, plaintiff appears to contend that the total of her employee contributions consist of money she placed into the account, which is clearly refuted by the exhibit. She ignores the compound interest in the account. She also appears to maintain that she placed the same amount of money into the account each of the eight

years she worked, which is also incorrect. Because plaintiff did not present the court with a more detailed description of her actual contributions for the time preceding her marriage, she has not shown clear error. It is possible that she put only a de minimis amount into the account during her first three years and greatly increased her contributions after marriage. Alternately, even if she put the same percentage of her salary into the account, she could have earned far less during the first three years she worked. Either of these circumstances would greatly alter the percentage of the amount plaintiff claims she should have been awarded as a separate asset. The trial court appropriately declined to speculate on the amount of plaintiff's premarital interest in this account. Accordingly, plaintiff has not met her burden of showing that the trial court's factual finding regarding this asset is clearly erroneous.

## IV. CALCULATION OF DEBTS

Plaintiff next argues that the trial court erred when it treated certain loans as martial debt and then awarded defendant a greater share of the marital assets to offset his assigned liability for the debts. Specifically, plaintiff challenges the inclusion of debts for a tractor purchase loan that was incurred shortly before plaintiff filed for divorce, a debt for seed purchased on a Pioneer account for seed to be planted during the 2016 season, and debts associated with a truck loan for the parties' son and a student loan for the parties' daughter, both of which defendant acted as a cosigner.

It is generally presumed that all property and debt accumulated during the marriage is marital. *Lesko v Lesko*, 184 Mich App 395, 401; 457 NW2d 695 (1990), criticized on other grounds in *Booth v Booth*, 194 Mich App 284, 291; 486 NW2d 116 (1992). Discussing the parties' debts, the trial court stated:

> Defendant testified that his farm debt was $369,430.00. Plaintiff contested two debts related to their children. Defendant testified that even though he does not make payments on the children's debt, he co-signed for the loans. Plaintiff did not. Defendant is responsible to pay this debt if his children discontinue payments. The Court considers this debt in the amount of $24,454.00 as personal, not farm debt. The Court finds that the other debt defendant testified about is reasonable and credible. The Court finds the defendant's farm and personal debt to be $369,430.00 and assigns this to the defendant.

Although the trial court stated that at least some of the items represented defendant's "personal" debt, it assigned this debt to him during the property division as if it were marital debt.

We reject plaintiff's challenge to the inclusion of the debt associated with the tractor purchase. Plaintiff asserts that because the tractor was to be used on the farm, it could have been included in the valuation of the farm itself. We do not disagree with that statement, but this would not have changed the overall calculation. The valuation of the farm did not include personal assets. Instead, the parties listed the farm tractors as separate assets, which the trial court awarded to defendant. The tractor debt of $31,000 relates to one of the listed tractors. Because that debt substantially reduces the value of the asset awarded to defendant, the trial court did not clearly err when it credited defendant with the debt associated with this asset.

But with respect to the seed account debt, we agree that plaintiff has the better argument. The seed debt was incurred for the purchase of an asset, namely, the seeds. While defendant had gained possession of the seeds, initially as personal property, presumably they could not have been included in the May 12, 2015 farm appraisal because they were planted in 2016. No separate listing for them was included in defendant's property division worksheet. In effect, defendant was credited for a debt without consideration of the value of the asset to which that debt related. The fact that defendant purchased the seed to use in the farming business does not change the analysis. The same would be the case if plaintiff had purchased an identical amount of art supplies for use in her business. Accordingly, we conclude that the trial court erred when it credited defendant with a debt of $18,212 for seed purchased on the Pioneer seed account.

With respect to the parties' daughter's student loan, plaintiff does not dispute that, as a cosigner of the loan, defendant may be held legally responsible for this debt. Instead, she argues that it should not have been credited to defendant because their daughter is currently paying it. Defendant, however, testified that he did not think this debt was currently being paid and that the loan had been deferred. Therefore, the trial court's finding that defendant was at reasonable risk of having to pay this debt is not clearly erroneous. We reject plaintiff's additional argument that this loan should not have been classified as marital debt because she disagreed with defendant's decision to act as a cosigner for the loan. Trial courts are not required to determine which party agreed to each debt incurred during a marriage. Such a requirement is unworkable as a practical matter.[1]

With respect to the truck loan for the parties' son, however, we conclude that the trial court erred. Unlike the student loan, the truck loan is secured by a tangible asset, i.e., the truck. If the parties' son were to stop making payments on the truck, it could be sold to at least partially reduce any amount owed by defendant. As with the tractor and seed loans, it was improper for the trial court to fully credit this debt to defendant without also considering the equity value of the truck to defendant.

In sum, we conclude that the trial court did not err in its treatment of the tractor loan and student loan, but that it erred in its allocation of the seed debt and its valuation of the debt for the truck loan. Accordingly, we remand for reconsideration of these debts and their effect on the ultimate division of the marital estate.

## V. RIGHT OF FIRST REFUSAL

In her final issue, plaintiff challenges language in the divorce judgment granting defendant a right of first refusal to purchase the marital home if plaintiff decides to sell the home

---

[1] Plaintiff's reliance on *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 398; 578 NW2d 267 (1998), is misplaced. That case involves the applicability of MCL 557.24(1), which essentially provides that a woman's separate property before marriage remains her separate property after marriage, and that third parties cannot attach it to satisfy the husband's personal debt. It has no applicability to a trial court's determination and distribution of marital debt for purposes of dividing property upon divorce.

within five years of the divorce. Plaintiff does not challenge the right of first refusal itself, but argues that it was unfair to order that "[t]he purchase price for the right of first refusal shall be an appraised fair market value by a licensed appraiser." Plaintiff argues that this provision is unfair because the appraised value could be less than what another purchaser would be willing to pay.

Defendant correctly observes that trial courts have wide discretion in deciding the conditions of the disposition of marital property. "Michigan law grants the trial court in a divorce case broad discretion to do equity regarding the disposition of property, within the outline of those factors articulated by our Supreme Court in [*Sparks*]." *Licavoli v Licavoli*, 292 Mich App 450, 454; 807 NW2d 914 (2011). "One could say that when granting a divorce, a circuit court has more discretion to fashion relief than it does in any other case, particularly when addressing the division of property." *Butler*, 308 Mich App at 212.

The challenged provision entitles plaintiff to the fair market value of the marital home should she decide to sell it and defendant were to exercise the right of first refusal. "Fair market value" for property represents "the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation." *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007); *Gardner v Dep't of Treasury*, 498 Mich 1, 8; 869 NW2d 199 (2015). Plaintiff essentially argues that she should be entitled to a possible windfall if a purchaser was willing to pay more than the fair market value of the property. The trial court relied on the then current fair market value of the property when it valued the home before awarding it to plaintiff. It was not unreasonable to provide that, should plaintiff sell it, defendant would receive the same consideration.

Plaintiff also argues that it was unfair for the trial court to order that the 35 acres adjacent to the home that the trial court awarded to plaintiff be surveyed, with plaintiff to share the cost of the survey. Plaintiff argues that a survey was unnecessary because the parties were aware of the applicable property line. Despite any mutual "knowledge" the parties may have shared about the property, the trial court did not err in finding that the land should be surveyed in order to clarify the true boundaries and avoid any possible future disputes.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Jane M. Beckering
/s/ Michael J. Riordan

-7-