## ROSE v STOKELY

Docket No. 241029. Submitted August 6, 2002, at Lansing. Decided October 1, 2002, at 9:00 A.M. Vacated in part by order entered October 29, 2002. 253 Mich App 801.

The Calhoun County prosecutor brought a paternity action in the Calhoun Circuit Court, Family Division, on behalf of Billie M. Rose, an unwed mother who was receiving public assistance and had the expenses related to the child's birth paid by the Family Independence Agency (FIA), against Robert J. Stokely, seeking, in part, an order of filiation and an order requiring the defendant to repay the FIA for all the plaintiff's confinement expenses related to the birth. The court, James C. Kingsley, J., entered an order of filiation and also ordered that the confinement expenses be apportioned between the plaintiff mother and the defendant father, according to their respective abilities to pay. Following an investigation by the friend of the court, the court ordered the plaintiff to assume liability for forty-one percent of the expenses and the defendant to assume liability for fifty-nine percent of the confinement expenses. The Court of Appeals denied the prosecutor's application for leave to appeal in an order entered June 28, 2001 (Docket No. 234392). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. 466 Mich 860 (2002).

The Court of Appeals held:

1. The relevant provisions of the Paternity Act, MCL 722.712(1) and 722.717(2), do not grant a circuit court discretion to apportion confinement expenses between the mother and the father of a child born out of wedlock. The plain language of subsection 2(1) allocates the liability for the expenses of the mother's confinement to the father.

2. MCR 7.215(I) requires the Court in this matter to follow the opinion in *Thompson v Merritt*, 192 Mich App 412 (1991), which held that the Paternity Act does not create a classification based on gender and does not violate equal protection guarantees. Were it not for *Thompson*, the Court would hold that the statutory language creates a classification based on gender and violates the defendant's equal protection rights.

3. The order apportioning the confinement expenses between the plaintiff and the defendant must be reversed and the matter must be remanded for entry of an order directing the defendant to pay the confinement expenses incurred by the plaintiff.

Reversed and remanded.

*John Hallacy*, Prosecuting Attorney, and *Niels Magnusson, III*, Assistant Prosecuting Attorney, for Billie M. Rose.

*Robison Law Office, P.C.* ( by *Mark J. Robison* and *Charles A. Robison*), for Robert J. Stokely.

Before: KELLY, P.J., and SAAD and SMOLENSKI, JJ.

SMOLENSKI, J. This case requires us to decide whether the Paternity Act, MCL 722.711 *et seq.*, grants a circuit court discretion to apportion confinement expenses between both the mother and the father of a child born out of wedlock. Further, we must consider whether the confinement expense allocation provision of that act violates equal protection guarantees.

First, we conclude that MCL 722.712(1) and MCL 722.717(2) do not grant a circuit court discretion to apportion confinement expenses between the mother and father of a child born out of wedlock. Second, were we not compelled to follow the rule of law established in *Thompson v Merritt*, 192 Mich App 412; 481 NW2d 735 (1991), we would hold that the statutory language creates a classification based on gender. Such a conclusion would require us to apply an intermediate level of constitutional scrutiny, under which we would conclude that the statute violates defendant's equal protection rights. However, *Thompson* requires us to hold that the statute does not create a classification based on gender and does

not violate equal protection guarantees. MCR 7.215(I).[1]

Accordingly, we reverse the circuit court's order apportioning confinement expenses between plaintiff and defendant. We remand for entry of an order directing defendant father to pay the confinement expenses incurred by plaintiff mother, in the amount of $2,908.41.[2]

### I. FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 1996, plaintiff gave birth to a daughter. On May 4, 2000, the Calhoun County prosecutor filed a paternity complaint against defendant, on plaintiff's behalf. The complaint alleged that plaintiff received public assistance through the Michigan Family Independence Agency (FIA) and that the FIA had paid the expenses related to the minor child's birth. In addition, the complaint alleged that defendant was failing to provide support for the minor child and that he was an able-bodied individual capable of providing support.[3]

The circuit court entered an order of filiation, as well as an order resolving child support and parenting time issues.[4] However, when the prosecutor requested entry of an order requiring defendant to repay the FIA for all plaintiff's confinement expenses, defendant objected. Defendant argued that confinement

---

[1] We therefore invoke the conflict resolution procedures contained in MCR 7.215(I).

[2] Below, the parties stipulated that plaintiff's actual uninsured confinement expenses amounted to $2,908.41.

[3] The parties also have a son who was born on September 19, 1997. The present appeal concerns only the parties' daughter.

[4] Those orders have not been challenged on appeal.

expenses should be apportioned between the mother and father of a child born out of wedlock, according to their respective abilities to pay. Defendant also argued that the Paternity Act, if interpreted to impose liability for confinement expenses on the father alone, would violate the Equal Protection Clauses of the Michigan and federal constitutions. The prosecutor responded by arguing that the Paternity Act did impose sole liability for confinement expenses on the father of a child born out of wedlock and that the statute's gender-based classification did not violate constitutional protections.

In a written opinion, the circuit court determined that two sections of the Paternity Act, MCL 722.712(1) and MCL 722.717(2), granted it discretion to apportion confinement expenses between both the mother and the father of a child born out of wedlock. The circuit court also determined that the statutes would violate equal protection guarantees if construed otherwise. The circuit court therefore ordered that confinement expenses be apportioned between plaintiff and defendant, according to their respective abilities to pay. After an investigation, the friend of the court recommended that plaintiff assume liability for forty-one percent of the confinement expenses and that defendant assume liability for fifty-nine percent of the confinement expenses.[5] The circuit court subsequently entered an order adopting that recommendation.

---

[5] This allocation was based on a determination of the parties' income and application of the Michigan Child Support Formula Manual.

We initially denied the prosecutor's application for leave to appeal.[6] The prosecutor then sought leave to appeal to our Supreme Court, which, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted.[7] We now reverse the circuit court's order and remand for entry of an order consistent with this opinion.

## II. STATUTORY CONSTRUCTION

First, we must determine whether MCL 722.712(1) and MCL 722.717(2) grant a circuit court discretion to apportion confinement expenses between both the mother and the father of a child born out of wedlock. We conclude that they do not. MCL 722.712(1) provides, in pertinent part:

> The parents of a child born out of wedlock are liable for the necessary support and education of the child. They are also liable for the child's funeral expenses. *The father is liable to pay the expenses of the mother's confinement, and is also liable to pay expenses in connection with her pregnancy as the court in its discretion may deem proper.* [Emphasis added.]

Further, MCL 722.717(2) provides, in pertinent part:

> An order of filiation entered under subsection (1) shall specify the sum to be paid weekly or otherwise . . . until the child reaches the age of 18. . . . In addition to providing for the support of the child, *the order shall also provide for the payment of the necessary expenses incurred by or for the mother in connection with her confinement,* for the funeral expenses if the child has died, for the support of the child

---

[6] *Rose v Stokely,* unpublished order of the Court of Appeals, entered June 28, 2001 (Docket No. 234392).

[7] *Rose v Stokely,* 466 Mich 860 (2002).

> before the entry of the order of filiation, *and for the*
> *expenses in connection with the pregnancy of the mother*
> *or of the proceedings as the court considers proper.*
> [Emphasis added.]

Thus, subsection 2(1) allocates liability for certain categories of expenses, while subsection 7(2) provides a method by which subsection 2(1) may be enforced, i.e., entry of an order of filiation.

### A. TEXTUAL ANALYSIS

The circuit court concluded that the language of subsections 2(1) and 7(2) granted it discretion to apportion confinement expenses between both the mother and the father of a child born out of wedlock. That conclusion was based on a reading of the statutory language that applied the court's discretionary authority to both pregnancy-related expenses and confinement expenses. With regard to subsection 2(1), the circuit court concluded that the phrase "as the court in its discretion may deem proper" applied both to the phrase the "expenses in connection with her pregnancy" and to the phrase "the expenses of the mother's confinement." With regard to subsection 7(2), the circuit court concluded that the phrase "as the court considers proper" applied both to the phrase "the expenses in connection with the pregnancy of the mother" and to the phrase "the necessary expenses incurred by or for the mother in connection with her confinement." We conclude that the circuit court's construction of the statute is erroneous.

This Court explained the rules of statutory construction in the case of *In re RFF*, 242 Mich App 188, 198; 617 NW2d 745 (2000):

> Statutory interpretation is a question of law that this Court reviews de novo. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. The starting point for determining the Legislature's intent is the specific language of the statute. The Legislature is presumed to have intended the meaning it plainly expressed, and when the statutory language is clear and unambiguous, judicial construction is neither required nor permitted. Where the language employed by the Legislature is susceptible to more than one interpretation, judicial construction is justified. When construing a statute, the court must use common sense and should construe the statute to avoid unreasonable consequences. [Citations omitted.]

We cannot agree with the trial court's reading of the statutory language. We conclude that the plain language of subsection 2(1) allocates liability for expenses related to the birth of a child born out of wedlock, as follows: (1) both parents are liable for the child's necessary support and education, (2) both parents are liable for the child's funeral expenses, (3) the father is liable for the expenses of the mother's confinement,[8] and (4) the father is liable for pregnancy-related expenses, as the trial court in its discre-

---

[8] MCL 722.717(2) states that an order of filiation shall provide for the payment of the "necessary" expenses incurred in connection with the mother's confinement. MCL 722.712(1) simply states that the father is liable to pay "the expenses of the mother's confinement. . . ." Reading these two statutory sections in pari materia, it appears that the father is liable only for those confinement expenses that were necessarily incurred. See *Thompson, supra* at 423. Because none of the litigants in the present case raised an issue regarding the necessity of the confinement expenses incurred by plaintiff, we need not address this aspect of the statutory language.

tion deems proper. The statutory language regarding the circuit court's discretion relates to only those expenses incurred in connection with the mother's pregnancy, and does not relate to the expenses of the mother's confinement.[9]

## B. *THOMPSON v MERRITT*

In addition to its textual analysis, the circuit court relied on this Court's decision in *Thompson, supra* at 425, to support its conclusion that subsections 2(1) and 7(2) granted it discretion to apportion confinement expenses. We conclude that the circuit court misinterpreted this Court's decision in *Thompson*.

As in the present case, the defendant in *Thompson* challenged the Paternity Act's "requirement that the father be solely responsible for the costs of hospital confinement . . . ." *Id.* at 424. The *Thompson* Court addressed that argument as follows:

> [T]he Paternity Act obligates the male to pay for the necessary costs of confinement and any costs of pregnancy the court deems appropriate. The female must pay those costs associated with hospital confinement that were incurred unnecessarily and the costs associated with the pregnancy, unless the court determines otherwise. . . . *[T]he statute gives the court the power to apportion the costs between the parents. Consequently, we believe that the challenged language reflects the intent of the Legislature to apportion the financial burdens of parenthood as equally and fairly as possible,* keeping in mind the interests of the child and the financial status of the parties. [*Id.* at 425 (emphasis added).]

---

[9] See also OAG, 1957-1958, No 3030, p 200 (July 19, 1958), concluding that the Paternity Act requires the father of a child born out of wedlock to pay all necessary confinement expenses, rather than only a portion of those expenses.

Here, the circuit court relied on the *Thompson* Court's statements that the "statute gives the court the power to apportion the costs between the parents," and that the Legislature intended to "apportion the financial burdens of parenthood . . . ." *Id.* The circuit court interpreted those statements to mean that subsections 2(1) and 7(2) granted trial courts discretion to apportion both pregnancy-related expenses and confinement expenses between the mother and father of a child born out of wedlock. As the circuit court stated in its written opinion, "[t]he Court of Appeals in *Thompson* obviously concluded that the qualifying language in the statutes applies throughout rather than just to the last phrase and thus permits apportionment of all expenses between the parties, including the costs of confinement." We do not believe that the *Thompson* decision can be fairly read to require such a conclusion.

The *Thompson* Court never examined whether the last phrases of subsections 2(1) and 7(2), regarding the circuit court's discretion, applied to confinement expenses. Further, the *Thompson* Court did not state that the Legislature intended to apportion confinement expenses between both the mother and the father of a child born out of wedlock. As the *Thompson* Court explained, subsection 2(1) governs liability for three broad categories of expenses: (1) necessary costs of confinement, (2) unnecessary costs of confinement, and (3) costs associated with pregnancy. The *Thompson* Court concluded that the Legislature "apportioned" these three categories of expenses by declaring (1) the father liable for all necessary confinement costs, (2) the mother liable for unnecessary confinement costs, and (3) both the mother and the

father liable for pregnancy-related costs, at the discretion of the trial court. The *Thompson* Court's reference to apportioning the financial burdens of parenthood does not support a conclusion that a circuit court possesses discretion to apportion confinement expenses between the mother and the father of a child born out of wedlock.[10]

Given the plain language of subsections 2(1) and 7(2), we must reverse the circuit court's order apportioning confinement expenses between both plaintiff and defendant. Neither the statutory language nor this Court's decision in *Thompson* permits a circuit court to enter such an order.

### III. EQUAL PROTECTION

Next, we must consider whether the Paternity Act's confinement expense allocation provision constitutes impermissible gender-based discrimination, in violation of the Equal Protection Clauses of the Michigan and federal constitutions.[11] As this Court stated in the case of *In re RFF*, *supra* at 205:

---

[10] Further, we note that the portion of *Thompson* discussing the Paternity Act's confinement expense allocation provision is obiter dictum. In *Thompson, supra* at 423, the mother chose not to utilize a medical facility covered by her health insurance. The trial court found that the mother's confinement expenses were unnecessarily incurred, and refused to hold the father liable for those expenses. *Id.* at 416, 423. On appeal, this Court affirmed the trial court's decision that the father was not required to pay any of the mother's confinement costs. *Id.* at 423. This ruling disposed of the issue regarding the allocation of confinement costs, and the subsequent discussion with respect to apportionment of such costs between the mother and the father was obiter dictum. *Cree Coaches, Inc v Panel Suppliers, Inc,* 384 Mich 646, 650; 186 NW2d 335 (1971). See also *McAuley v General Motors Corp,* 457 Mich 513, 526, n 1; 578 NW2d 282 (1998) (TAYLOR, J., concurring in result).

[11] In its remand order, our Supreme Court stated:

Equal protection of the law is guaranteed by the federal and state constitutions. The Michigan and federal Equal Protection Clauses offer similar protection. Generally, equal protection requires that persons in similar circumstances be treated similarly. "[I]t is well established that even if a law treats groups of people differently, it will not necessarily violate the guarantee of equal protection." Neither constitution has been interpreted to require absolute equality. When legislation is challenged as violative of the equal protection guarantee under either constitution, it is subjected to judicial scrutiny to determine whether the goals of the legislation justify the differential treatment it authorizes. The level of scrutiny applied depends on the type of classification created by the statute and the nature of the interest affected by the classification. [Citations omitted.]

"When a party raises a viable equal protection challenge, the court is required to apply one of three traditional levels of review, depending on the nature of the alleged classification." *Crego v Coleman*, 463 Mich 248, 259; 615 NW2d 218 (2000). The most stringent level of review, referred to as "strict scrutiny," is applied "where the law results in classifications based on 'suspect' factors such as race, national origin, or ethnicity . . . ." *Id.*, citing *Plyler v Doe*, 457 US 202, 216-217; 102 S Ct 2382; 72 L Ed 2d 786 (1982). An intermediate level of review, referred to as "heightened scrutiny," is applied where the law results in classifications based on factors such as illegitimacy

---

In lieu of granting leave to appeal, the case is remanded to the Court of Appeals for consideration as on leave granted. MCR 7.302(F)(1). The Court of Appeals is directed to determine the proper level of scrutiny to be applied to [defendant's] equal protection claim, and whether MCL 722.712(1) violates that standard. *Crego v Coleman*, 463 Mich 248 (2000); *Geduldig v Aiello*, 417 US 484 (1974). The Court of Appeals is to render its decision by October 1, 2002. [*Rose v Stokely*, 466 Mich 860 (2002).]

and gender. *Crego, supra* at 260, citing *Clark v Jeter,* 486 US 456, 461; 108 S Ct 1910; 100 L Ed 2d 465 (1988). The most deferential level of review, referred to as "rational basis," is applied where the law does not result in classifications based on impermissible factors. *Crego, supra* at 259, 261.

### A. CLASSIFICATION BASED ON GENDER

In order to resolve defendant's equal protection claim, we must first determine whether the confinement expense allocation provisions contained in MCL 722.712(1) and MCL 722.717(2) create a classification based on gender. Were we not compelled to follow the rule of law established in *Thompson, supra,* we would hold that the statutory language does create a classification based on gender.[12]

As in the present case, the defendant in *Thompson, supra* at 424, argued that the Paternity Act's confinement expense allocation provision amounted to "impermissible gender-based discrimination in violation of the equal protection clauses of the state and federal constitutions." Examining that claim, the *Thompson* Court held that subsections 2(1) and 7(2) do not create a classification based on gender:

> [T]he Paternity Act obligates the male to pay for the necessary costs of confinement and any costs of pregnancy the court deems appropriate. The female must pay those costs associated with hospital confinement that were incurred unnecessarily and the costs associated with the pregnancy, unless the court determines otherwise. *In our view, the language does not make gender a necessary consideration in determining which parent pays the costs.* Instead, the

---

[12] MCR 7.215(I).

statute gives the court the power to apportion the costs between the parents. Consequently, we believe that the challenged language reflects the intent of the Legislature to apportion the financial burdens of parenthood as equally and fairly as possible, keeping in mind the interests of the child and the financial status of the parties. *If a differentiation is based on a factor other than sex, there is no sex-based denial of equal protection or due process of law* unless it can be found to be a mere pretext to effect an invidious discrimination. [*Thompson, supra* at 425 (emphasis added).]

We disagree with this analysis, and would conclude that the statutory language does create a classification based on gender.[13] Subsection 2(1) clearly provides that the father of a child born out of wedlock is liable for the mother's confinement expenses. The statute does not make the mother and the father jointly liable for these expenses, and does not grant a circuit court discretion to allocate those expenses on the basis of the parties' respective abilities to pay. As in *Orr v Orr*, 440 US 268, 273; 99 S Ct 1102; 59 L Ed 2d 306 (1979), there is no question that defendant "bears a burden he would not bear were he female." By authorizing the imposition of confinement expenses solely on fathers, but not on mothers, the Paternity Act provides that different treatment be accorded on the basis of gender; it thus establishes a classification subject to intermediate scrutiny under the Equal Protection Clauses of the Michigan and federal constitutions. See *id.* at 278-279.

---

[13] Further, the prosecutor conceded below and concedes on appeal that the statutory language creates a classification based on gender.

## B. INTERMEDIATE SCRUTINY

"There can be no doubt that our Nation has had a long and unfortunate history of sex discrimination. Traditionally, such discrimination was rationalized by an attitude of 'romantic paternalism' which, in practical effect, put women, not on a pedestal, but in a cage." *Frontiero v Richardson*, 411 US 677, 684; 93 S Ct 1764; 36 L Ed 2d 583 (1973). Legislatively drawn classifications based on gender are often an "accidental byproduct of a traditional way of thinking about females that reflected old notions and archaic and overbroad generalizations about the roles and relative abilities of men and women." *Heckler v Mathews*, 465 US 728, 745; 104 S Ct 1387; 79 L Ed 2d 646 (1984).[14] This traditional way of thinking has changed over time, and females are no longer considered to be "destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas." *Stanton v Stanton*, 421 US 7, 14-15; 95 S Ct 1373; 43 L Ed 2d 688 (1975). Because "[l]egislative classifications which distribute benefits and burdens on the basis of gender carry the inherent risk of reinforcing the stereotypes about the 'proper place' of women and their need for special protection," such classifications will be upheld only if they "serve important governmental objectives and [are] substantially related to achievement of those objectives." *Orr, supra* at 279, 283.[15]

Here, the prosecutor argues that the Paternity Act's confinement cost allocation provision is substantially related to the achievement of an important govern-

---

[14] Internal quotations and citations omitted.
[15] Internal quotations and citations omitted.

mental objective.[16] Specifically, the prosecutor argues that the statutory provision was designed to encourage unwed mothers to seek proper medical care. The prosecutor contends that unwed mothers might forgo needed medical care unless they are assured that they will not be held liable for the expense of such care. In essence, we understand the prosecutor's argument to be that the statute uses gender as a proxy for need, assuming that all unwed mothers are in need of financial assistance from the father of their child, in order to pay for proper medical care.[17]

The United States Supreme Court rejected a similar argument in *Orr, supra.* In *Orr*, the Court examined an Alabama statute that authorized state courts to place an alimony obligation on husbands, but never on wives. *Orr, supra* at 271. Alabama's intermediate appellate court concluded that the statute was designed for " 'the wife of a broken marriage who needs financial assistance.' " *Id.* at 280. Thus, the stated legislative purpose for the gender-based classification was to "provide help for needy spouses, using sex as a proxy for need." *Id.* The United States Supreme Court held in *Orr* that the statute in question violated the Equal Protection Clause because Alabama's statutory scheme already permitted "indi-

---

[16] In the trial court, the prosecutor simply argued that the statute's gender-based classification was rationally related to an important governmental purpose.

[17] The circuit court rejected this argument, concluding that if this truly was the Legislature's purpose, the statute would impose liability on fathers for the entire cost of prenatal care, instead of allowing circuit courts discretion to allocate pregnancy-related costs between both the mother and the father. We agree with the circuit court's observation on this point.

vidualized hearings at which the parties' relative financial circumstances are considered . . . ." *Id.* at 281. Thus, there was no reason to use gender as a proxy for need, and this rationale was inadequate to justify the statute's gender-based classification. *Id.* at 281-282.

Likewise, under our Paternity Act, circuit courts already conduct individualized hearings to examine the parties' relative financial circumstances. Indeed, such hearings must be conducted before a trial court can enter an order of filiation specifying the unmarried parents' respective child support obligations. MCL 722.717(2).[18] We recognize that only mothers undergo confinement and childbirth, while fathers do not. However, it is not true that all mothers, or even all unwed mothers, are unable to afford costs associated with confinement and childbirth. Because individualized hearings can determine which unwed mothers are in need of financial assistance from the father of their child, the statutory purpose advanced by the prosecutor can be effectuated without placing the burden of confinement costs solely on fathers. *Orr, supra* at 281-282.

Defendant argues that the Paternity Act's confinement cost allocation provision is a lingering vestige of the common-law "necessaries" doctrine, which required husbands to pay for the necessary medical services received by their wives. Defendant contends that the Legislature adopted this provision of the Paternity Act in order to place unmarried women on an equal footing with married women, regarding pay-

---

[18] Here, the circuit court referred the matter to the friend of the court, which conducted an investigation regarding the parties' financial circumstances.

ment for the necessary costs of confinement. While the necessaries doctrine remained in force, the fathers of children borne to married women (i.e., their husbands) were automatically liable for the necessary medical costs incurred during childbirth. The Paternity Act's confinement cost allocation provision gave unmarried women the same advantage, requiring the fathers of their children to be entirely liable for their necessary medical costs incurred during childbirth.

The common-law necessaries doctrine remained unmodified until just four short years ago, when our Supreme Court recognized that the doctrine violated equal protection principles. *North Ottawa Community Hosp v Kieft*, 457 Mich 394; 578 NW2d 267 (1998). In that case, our Supreme Court abrogated the common-law necessaries doctrine, stating:

> [T]he common-law necessaries doctrine imposing the support burden only on a husband could be justified in the past because it was substantially related to the important governmental objective of providing necessary support to dependent wives. However, the contemporary reality of women owning property, working outside the home, and otherwise contributing to their own economic support calls for the abrogation of this sex-discriminatory doctrine from early common law. [*Id.* at 407-408.]

We agree with defendant that the abrogation of the common-law necessaries doctrine removed any legitimate basis for the Paternity Act's allocation of confinement costs on the basis of gender.

The prosecutor's appeal brief can also be read to advance another purpose for the Paternity Act's gender-based classification. The prosecutor argues that the FIA pays the confinement expenses of unwed

mothers who are entitled to state Medicaid benefits, and that the Legislature intended to permit recoupment of these expenses from the fathers of children born out of wedlock. This argument relies on a crucial, but mistaken assumption: that the Paternity Act's confinement expense allocation provision applies only to unwed mothers receiving government assistance. The Paternity Act is not so limited; the statute applies to *all unwed mothers*, regardless of their financial status. Not all unwed mothers need financial assistance from the father of their child in order to pay for proper medical care. Many women, wed and unwed, are covered by their own health care insurance and are otherwise equally able to pay for the birth of their children.

The prosecutor's argument also implies that relieving fathers of sole responsibility for confinement costs regarding the birth of illegitimate children will result in an unintended consequence: unwed mothers receiving state welfare benefits will be required to repay the FIA for the necessary costs of their confinement. We stress that the issue before us is *not* whether the mother of a child born out of wedlock should or may be required to repay the FIA for her necessary confinement expenses. The issue before us is whether the father of a child born out of wedlock may properly be required to shoulder the entire burden of the mother's confinement expenses.[19] Although we concede that recoupment of confinement expenses from fathers who have the ability to pay such expenses constitutes an important governmental

---

[19] Further, we note the prosecutor's statement in his appeal brief that the grantee of public assistance does not have to repay government benefits, absent misconduct.

objective, this purpose can be achieved by gender-neutral legislation.

We would conclude that the Paternity Act's confinement cost allocation provision constitutes a gender-based classification that violates the Equal Protection Clauses of the Michigan and federal constitutions. However, we are constrained to follow *Thompson, supra* at 425, and hold that the statutory provision does not violate equal protection guarantees.

Reversed and remanded for entry of an order directing defendant to pay the confinement expenses incurred by plaintiff, in the amount of $2,908.41. We do not retain jurisdiction.