NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0828n.06

No. 12-2350

**FILED**
Sep 12, 2013
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RAE ANDERSON BULLARD; )
ROCKWOOD W. BULLARD, III, )
)
Plaintiffs-Appellants, )
) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR
) THE EASTERN DISTRICT OF
INDYMAC BANK FSB; MORTGAGE ) MICHIGAN
ELECTRONIC REGISTRATION SYSTEMS, )
INC.; INDYMAC MORTGAGE SERVICES; )
ONEWEST BANK, FSB, )
)
Defendants-Appellees. )

Before: SILER and COLE, Circuit Judges; DOWD, District Judge.*

**SILER**, Circuit Judge. Plaintiffs Rae and Rockwood Bullard, husband and wife, appeal the district court's grant of summary judgment in favor of Defendant OneWest Bank, FSB (successor-in-interest to IndyMac Bank, FSB, a named party), and the denial of their motion to dismiss OneWest Bank's second amended counter complaint. This case turns on the existence of a valid and enforceable mortgage by IndyMac Bank on property owned by Rae Bullard. For the following reasons, we **AFFIRM** the district court.

**I.**

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

On April 1998, Rae Anne Anderson ("Rae Bullard") not yet married to Rockwood W. Bullard, III ("Rockwood Bullard") acquired the vacant land located at 6765 Ridgewood Road in Clarkston, Michigan ("property"). In December 2003, Rae and Rockwood married. Both are practicing attorneys in Michigan. Around the time of their marriage, the couple began constructing a new house on the property. Rae retained title to the property in her name only. In order to fund the construction of a house on the property, in January 2004, Rae obtained a loan from IndyMac Bank[2] in the amount of $337,000.00. That loan was secured by a mortgage on the property (first mortgage). The first mortgage was subsequently modified in July 2004, to increase the amount to $400,000.00. The modification agreement was made by "Rae Anne Anderson Unmarried Woman," and signed by "Rae Anne Anderson."

When construction costs increased, the Bullards took out another loan to finance the house. In March 2005, they obtained a loan from Quicken Loans in the amount of $100,000.00, secured by a second mortgage on the property (second mortgage). Both Bullards executed the second mortgage. The Bullards later refinanced their second mortgage by obtaining a third mortgage from Quicken Loans (third mortgage). This third mortgage increased the Bullards' Quicken Loans amount to $150,000.00. In May 2006, the Bullards obtained a larger loan from Quicken Loans in the amount of $250,000.00, also executed by husband and wife and secured by a mortgage on the property (fourth mortgage). The fourth mortgage paid off the third mortgage.

---

[2]OneWest Bank, FSB, is a federally chartered savings bank and is the successor-in-interest to IndyMac Bank, FSB.

In the fall of 2006, Rockwood Bullard negotiated with IndyMac Bank to combine the first and fourth mortgage into a single mortgage. In October 2006, Rae Bullard submitted a loan application to IndyMac Bank for the purpose of combining the mortgages. IndyMac Bank set the closing for the loan on December 1, 2006, at the Bullards' law office. IndyMac Bank prepared the loan documents, which required the signature of "Rae Anderson-Bullard" only. Despite instructions to obtain only Rae Bullard's signature, the notary present insisted on obtaining Rockwood Bullard's signature as well because she believed Michigan to be a "spousal state." After the closing, the notary forwarded the signed documents to the closing agent, National Real Estate Investment Services. She was told by National Real Estate Investment Services that the forms were incorrect and was directed to have the documents signed by Rae Bullard only. On December 4, 2006, the notary returned to the Bullards' law office and Rae Bullard signed another mortgage document. Only this mortgage was recorded.

From December 2006 to December 2008, the Bullards made their monthly mortgage payments of $4,067.71. In January 2009, the payments stopped and the Bullards have made no mortgage payments since. OneWest Bank, IndyMac Bank's successor-in-interest, has made the mortgage payments, as well as real estate tax and property insurance payments. In February 2009, Rae Bullard filed for bankruptcy in the Eastern District of Michigan. In May 2009, she obtained an order for Chapter 7 discharge, which included the IndyMac Bank promissory note.

In June 2009, IndyMac Bank commenced a non-judicial foreclosure of the property and scheduled a sheriff's sale for July 21, 2009. The Bullards filed their complaint in district court on July 20, 2009. In July 2010, the Bullards filed a first amended complaint containing a sole count,

mortgage invalidity pursuant to Michigan Complied Laws § 600.6023(1)(h). They claimed that, even though Rockwood Bullard signed the December 1, 2006, mortgage loan documents, the December 1 mortgage was superceded by the second mortgage signed solely by Rae Bullard on December 4, 2006.

In 2012, the district court granted summary judgment to OneWest Bank and denied summary judgment for the Bullards.

## II.

We review *de novo* a district court's grant of summary judgment, as well as its interpretation of a contract. *Coble v. City of White House, Tenn.*, 634 F.3d 865, 867 (6th Cir. 2011); *Parameter Driven Software, Inc. v. Massachusetts Bay Ins. Co*, 25 F.3d 332, 336 (6th Cir. 1994).

## III.

The district court found that the mortgages completed on December 1, 2006, and December 4, 2006, were both valid and enforceable. Because we agree with the district court's holding regarding the December 4 mortgage, we need not reach the question of validity with respect to the December 1 mortgage. The Bullards argue that (1) the December 4 mortgage is not enforceable because it was signed only by Rae Bullard and (2) Rockwood Bullard has a homestead interest in the property which is protected by Michigan law. Both arguments are unfounded.

Rae Bullard may sign the mortgage by herself under Michigan law. A married woman who owns property in her own name may mortgage the property as if she were single. *North Ottawa Comm. Hosp. v. Kieft*, 578 N.W.2d 267, 269 (Mich. 1998); *see* Mich. Const. 1963 art. 10, § 1

(abolishing coverture restrictions on the property rights of married women). Rae Bullard's husband need not sign the mortgage in order for it to be valid.

Additionally, the Bullards argue that Rockwood has a protected homestead interest in the property under the Michigan Constitution and statutory law. Mich. Const. 1963, art. 10, § 3; Mich. Comp. Laws § 600.6023(1)(g).[3] The homestead exemption, however, does not apply to the facts established in this case.[4] Under the statute, the homestead provision applies only to property which is both "owned and occupied" by the person asserting the exemption. Mich. Comp. Laws § 600.6023(g). Thus, a homestead interest does not exist in property, "the title to which is in another person." *Storey v. Storey*, 267 N.W. 763, 764 (Mich. 1936).

Rockwood Bullard is not eligible for the homestead exemption because he does not own the property. Rae Bullard has title; thus, Rockwood does not have a property interest as a matter of law. The district court correctly rejected this argument and did not err in finding the December 4 mortgage enforceable.

## IV.

The district court also held that even if both mortgages were invalid and unenforceable, the Bullards' complaint would still be subject to dismissal based on the doctrine of judicial estoppel.

---

[3]The homestead provision formerly found in Mich. Comp. Laws § 600.6023(1)(h) was amended effective January 2, 2013, and is now found in Mich. Comp. Laws § 600.6023(1)(g).

[4]Although Rae Bullard quitclaimed the property to "Rockwood W. Bullard III and Rae Anderson-Bullard, his wife," in October 2010, that occurred more than a year after OneWest Bank initiated foreclosure proceedings and almost 4 years after the mortgage was signed. Rockwood makes no title or ownership claim on the property in his filings with this court.

Specifically, the court noted that Rae Bullard's pursuit of her "invalid mortgage" claim was clearly contrary to the position she asserted in bankruptcy court, where she indicated the property was subject to a mortgage held by IndyMac Bank in which the debt owed exceeded the market value of the house. While we agree that Rae Bullard's failure to adequately amend her bankruptcy schedules to reflect her mortgage claim  as was her duty  gives at least the appearance of gamesmanship, we do not reach the judicial estoppel issue as it is unnecessary to decide this case.

**AFFIRMED**.