NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0791n.06

Case No. 13-2492

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 17, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BASIM ELIAS HADDAD; SARENA HADDAD, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE EASTERN DISTRICT OF MICHIGAN |
| RANDALL S. MILLER ASSOCIATES, PC, | ) ) | |
| Defendant-Appellee. | ) ) | OPINION |

BEFORE: SILER, BATCHELDER and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**. Husband and wife, Basim "Paul" Haddad and Sarena Haddad, sued law firm Randall S. Miller Associates, PC ("RSM") in Michigan state court, alleging that RSM violated the Fair Debt Collections Practice Act ("FDCPA"), 15 U.S.C. § 1692f(6)(A) and (C), by improperly completing a foreclosure by advertisement under Michigan law, Mich. Comp. Laws § 600.3204. RSM removed the case to federal court and filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss. The district court summarily dismissed the Haddads' complaint. For the reasons explained below, we **AFFIRM**.

I.

Paul and Sarena Haddad owned a house at 37780 McKenzie Court in Farmington Hills, Michigan. In 2002, the Haddads had two mortgages on this property—one to ABN AMBRO for

$300,700 and another to Oakland Commerce Bank for $95,000. In 2003, Anthony Taratuta, a loan officer at Standard Federal Bank, contacted Paul to discuss a promotional, low-interest mortgage with him.[1] After Paul completed an application, Taratuta told him that he had been approved for a $400,000 loan. Paul went to close the loan by himself. Taratuta explained that Paul could sign not only for himself but also for his wife and the witnesses on the loan documents, so Paul did. Standard Federal Bank recorded the mortgage in the Oakland County Register of Deeds.

On May 9, 2008, Standard Federal Bank—which at that point had been acquired by ABN AMBRO and rebranded as LaSalle Bank Midwest, N.A.[2]—sued the Haddads, claiming that they had breached their loan obligations. LaSalle requested that the court either order the Haddads to pay the full amount due or order a foreclosure sale and then require the Haddads to pay any deficiency. In June 2008, Sarena filed an "answer, affirmative defenses, and counter claims," stating, among other things, that she "neither signed nor agreed to said mortgage" and that the mortgage "is invalid because there is no signature or assent to the above described mortgage."

In April 2009 the Haddads filed a voluntary Chapter 7 bankruptcy petition. Pursuant to the bankruptcy automatic stay under 11 U.S.C. § 362, the Oakland County Circuit Court entered an order administratively closing LaSalle's action against the Haddads. The order "closed [LaSalle's claim] for administrative purposes without prejudice" but explained that it did "not constitute a dismissal or a decision on the merits."

---

[1] RSM has agreed, for the purposes of this appeal, to accept the facts described here—even those that were not detailed in the Haddads' complaint—as true.

[2] Bank of America eventually acquired most of the financial entities involved in this case. *See, e.g.*, *Bragg v. ABN AMBRO N. Am., Inc.*, 579 F. Supp. 2d 875, 879 n.1 (E.D. Mich. 2008) ("Standard Federal was subsequently acquired by ABN AMBRO . . . ABN AMBRO became LaSalle Bank Corporation. LaSalle Bank was subsequently acquired by Bank of America . . . .").

Schedule A of their bankruptcy petition required the Haddads to "list all real property in which [they possessed] any legal, equitable, or future interest." The Haddads listed the McKenzie Court property, stating there was a $645,344 secured claim on it. *Id.* Schedule D of the petition required the Haddads to identify "all entities holding claims secured by property of the debtor as of the date of filing of the petition" and instructed that "[i]f the claim is disputed, place an 'X' in the column labeled 'Disputed.'" The Haddads identified LaSalle's mortgage on the McKenzie Court property but did not identify the mortgage as disputed. The Haddads also filed a Statement of Intention to identify "[d]ebts secured by property of the estate[,]" in which they identified LaSalle's debt as secured by the property at 37880 McKenzie Court and stated that they "intend to . . . [r]eaffirm the debt" and "[r]etain" the property. The Haddads indicated that the property was "[n]ot claimed as exempt." The Haddads were discharged from bankruptcy on July 28, 2009.

When the Haddads failed to make timely payments, Bank of America, which had acquired LaSalle Bank, retained RSM, and RSM commenced a foreclosure by advertisement on the McKenzie Court property. Bank of America bought the property at a foreclosure sale on May 1, 2012.

II.

On June 18, 2013, the Haddads filed suit against RSM in the Circuit Court for the County of Oakland, Michigan, alleging that RSM violated the FDCPA, 15 U.S.C. § 1692f, when it represented Bank of America in the foreclosure by advertisement on the Haddads' property. Invoking federal question jurisdiction under 28 U.S.C. § 1331, RSM removed the action to the Eastern District of Michigan.

In their complaint, the Haddads assert that RSM violated two portions of the FDCPA—
§ 1692f(6)(A) and (C)—by not complying with Michigan's foreclosure by advertisement statute.
Subsection (A) prohibits a debt collector from "[t]aking . . . any nonjudicial action to effect
dispossession or disablement of property if . . . there is no present right to possession of the
property claimed as collateral through an enforceable security interest." 15 U.S.C.
§ 1692f(6)(A). The Haddads' complaint states:

> [RSM's] actions constitute a violation of [15 U.S.C. § 1692f(6)(A)] because it
> took nonjudicial action to effect dispossession or disablement of property where
> there was no present right to possession through an enforceable security interest in
> a foreclosure by advertisement while the lawsuit seeking statutory foreclosure
> remained filed and pending.

Subsection (C) of § 1692f(6) prohibits a debt collector from "[t]aking . . . any nonjudicial action
to effect dispossession or disablement of property if . . . the property is exempt by law from such
dispossession or disablement." 15 U.S.C. § 1692f(6)(C). The Haddads' complaint explains:

> [RSM's] actions constitute a violation of [§ 1692f(6)(C)] because it took
> nonjudicial action to effect dispossession or disablement of property when the
> property was exempt by law from dispossession or disablement while the lawsuit
> seeking statutory foreclosure remained filed and pending.

RSM moved to dismiss the Haddads' complaint for failure to state a claim under Federal
Rule of Civil Procedure 12(b)(6). RSM argued that Bank of America had an enforceable
security interest when it retained RSM to foreclose on the Haddads' property and that the
Michigan state court's administrative closure order had discontinued LaSalle's judicial
foreclosure action, thereby permitting RSM to pursue a foreclosure by advertisement. In
response to this motion, the Haddads presented an additional argument: because Paul had forged
Sarena's signature, Bank of America's mortgage was invalid, and thus RSM violated the FDCPA
by foreclosing on the property when Bank of America did not have a security interest in it.
RSM's reply countered that the Haddads' complaint did not mention this theory and that

attempting to amend the complaint would be futile under the doctrines of ratification, judicial estoppel, equitable subrogation, and equitable mortgage.

On September 26, 2013, the district court held a hearing on RSM's motion to dismiss. After hearing argument, the district court stated:

> Well, we're seeing a lot of this kind of case where the parties to a mortgage or parties to a loan are disagreeing about what happens when you get to the point that the loan is not being paid upon, and I—there are so many technicalities in this that one has to get by those technicalities and ask oneself what is the intent of the law and what the parties did here and what is the intent of the morality. I've tried to do that, and I've come to the conclusion this motion of the Defendant should be granted and I will grant the motion and Defendant will submit an order.

Shortly thereafter, on October 8, 2013, the district court entered an order granting RSM's motion to dismiss, the substance of which states in toto:

> Defendant having filed a motion to dismiss, plaintiff having filed a response in opposition, defendant having filed a reply brief, the Court having conducted oral argument on September 26, 2013, and being otherwise fully advised of the premises;
> IT IS HEREBY ORDERED AND ADJUDGED that defendant's motion is granted and plaintiffs' complaint is dismissed with prejudice.

This appeal ensued.

### III.

We review the dismissal of the Haddads' claims de novo. *E.g.*, *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, a claim's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). But this assumption that all the complaint's allegations are true does not apply to legal conclusions—including legal conclusions cloaked as fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Further still, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Although the standard "does not require 'detailed factual allegations,'" *id*. at 678 (quoting *Twombly*, 550 U.S. at 555), or demand a showing of probability, *Barney v. PNC Bank*, 714 F.3d 920, 924 (6th Cir. 2013), "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not discharge a plaintiff's burden, nor will "'a formulaic recitation of the elements of a cause of action[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

IV.

Because the district court did not provide reasons for dismissing the Haddads' claims, on appeal the Haddads focus on undercutting the arguments RSM presented in support of its motions to dismiss below. Generally, the Haddads argue that the district court must have fallen prey to RSM's mischaracterization of facts and that the court erred by not accepting everything in the complaint as true. At the outset, we note that the Haddads read "the assumption that all of the allegations in the complaint are true," *Twombly*, 550 U.S. at 555, extraordinarily broadly and rely on some pre-*Iqbal* and *Twombly* case law to provide the circular argument that, because their complaint stated that RSM violated the law and their complaint must be taken as true, then their complaint cannot be dismissed for failure to state a claim. This premise pervades nearly all of the Haddads' arguments; it is mistaken. The Haddads' complaint is replete with legal conclusions cloaked as fact and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, which we are not required to accept as true. *Id*.

The cruces of the rest of the Haddads' claims on appeal can be distilled into two points: (1) RSM violated the FDCPA by foreclosing while the 2008 suit in the Oakland County Circuit Court remained pending and (2) RSM violated the FDCPA by foreclosing when Bank of America did not hold a valid mortgage on the Haddads' property.

A.

Under Michigan law, a mortgagee may commence a foreclosure by advertisement only if certain conditions are satisfied. *See* Mich. Comp. Laws § 600.3204. Relevant here, a mortgagee may only foreclose by advertisement if "[a]n action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; *or, if an action or proceeding has been instituted, the action or proceeding has been discontinued*; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part." Mich. Comp. Laws § 600.3204(1)(b) (emphasis added).

The Haddads rely on § 600.3204(1)(b) to claim that the foreclosure by advertisement RSM initiated for Bank of America was invalid because the 2008 action in Michigan Circuit Court "remained filed and pending." To support this argument, the Haddads lean on the April 22, 2009 "Order for Administrative Closing Due to Bankruptcy Stay," which states, "It is ordered: 1. This case is closed for administrative purposes without prejudice. 2. This closing does not constitute a dismissal or a decision on the merits. 3. When the bankruptcy stay has been removed this case may be reopened on the motion of any party." The Haddads couple this "does not constitute a dismissal or decision on the merits" from the order with the *American Heritage Dictionary, Second College Edition*'s definitions of "discontinue," "dismiss," and "pending" to claim that the 2008 action remains pending and therefore has not been discontinued.

If we were interpreting whether a claim that has been "closed for administrative purposes" has been "discontinued" in a vacuum, then we might need to delve straight into dictionary definitions. Although § 600.3204(1)(b) does not define "discontinued," we are not wholly without guidance. First, we note generally that the Michigan Supreme Court has emphasized that the foreclosure by advertisement scheme should not be constrained by unreasonably strict constructions of law. *E.g.*, *Cramer v. Metro. Sav. & Loan Ass'n*, 258 N.W.2d 20, 24 (Mich. 1977). We then turn to the automatic stay provision, 11 U.S.C. § 362, as a starting point. Section 362 states in relevant part that filing a bankruptcy petition operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." § 362(a)(1). Section 362(a)(1)'s staying the continuance of an action and the court's closure of the 2008 claim pursuant to the automatic stay together suggest that, because the action had been stayed from continuing, it had therefore been discontinued.

> Addressing § 600.3204(1)(b), the Michigan Court of Appeals recently explained:
>
> "[D]iscontinue" means "put an end to; stop; terminate" or otherwise to stop or cease or abandon. The phrasing in the passive voice, rather than active voice, suggests that it is immaterial how the claim came to be discontinued or whether it was discontinued by an act of any particular party, or even the court. And the simple fact is that Count II is no longer active . . . . For whatever reason, CitiMortgage's claims are "discontinued." Consequently, all other issues being equal, [Mich. Comp. Laws §] 600.3204(1)(b) no longer precludes foreclosure by advertisement . . . .

*CitiMortgage, Inc. v. Stamper*, No. 311716, 2014 WL 953566, at *5 (Mich. Ct. App. Mar. 11, 2014). *Stamper* is illustrative in two ways. First, the opinion indicates that a claim has been discontinued not only if it has been wholly ended or terminated but also, more broadly, if it has been otherwise ceased or abandoned. Second, it demonstrates that a claim which is "no longer

active"—in *Stamper* because further pursuing the relevant claim would have required seeking a court order—is discontinued for the purposes of Mich. Comp. Laws § 600.3204(1)(b). Both of these points favor a broader reading of "discontinued."

The general purpose of § 600.3204(1)(b) also supports the notion that the 2008 case has been discontinued because it is administratively closed. As we explained over forty years ago, § 600.3204(1)(b) is designed "to force an election of remedies which if not made would create the possibility that the mortgagee could foreclose the mortgage and at the same time hold the maker of the note personally liable for the debt." *United States v. Leslie*, 421 F.2d 763, 766 (6th Cir. 1970); *accord Lee v. Clary*, 38 Mich. 223, 227 (Mich. 1878) (explaining that § 600.3204's precursor "clearly refers to suits on the debt, and not to foreclosure proceedings on the mortgage, and its object is to prevent proceedings, at the same time to prosecute the personal liability of the mortgagor and pursue the land. It is to prevent a simultaneous double vexation . . . ."). Double vexation or double recovery is not an issue here. Bank of America elected to seek one remedy— foreclosure—rather than the other—reopening the claim for damages.

Taking the text and purpose Mich. Comp. Laws § 600.3204(1)(b) in conjunction with 11 U.S.C. § 362(a)(1) and *Stamper*, we hold that the 2008 claim against the Haddads had been discontinued. Accordingly, RSM did not violate the 15 U.S.C. § 1692f(6) or Mich. Comp. Laws § 600.3204(1)(b).

B.

The Haddads' remaining claims center on the contention that Bank of America did not have a valid, enforceable mortgage. They claim that because only Paul signed the documents and one tenant by the entirety acting alone cannot encumber the entireties' property, Bank of America's mortgage was void. The Haddads thus argue that RSM violated

15 U.S.C. § 1692f(6)(A) by foreclosing without a valid mortgage. Taking the Haddads' contention that only Paul signed the documents as true, RSM argues that Bank of America nonetheless had a valid mortgage under the doctrines of ratification, judicial estoppel, equitable subrogation, or equitable mortgage.

At this stage the Haddads are judicially estopped from challenging the validity of the mortgage. Judicial estoppel is an equitable doctrine that applies when a party attempts to take "a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding." *Warda v. Comm'r*, 15 F.3d 533, 538 (6th Cir. 1994). Judicial estoppel does not apply when a party's prior position is based on "nothing more than mistake or inadvertence." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002); *see also New Hampshire v. Maine,* 532 U.S. 742, 753 (2001).

As an equitable doctrine, judicial estoppel has not been reduced to a hard-and-fast test, but our precedent provides some guiding factors in this context: (1) whether the party assumed a position that was contrary to the one that was asserted under oath in the bankruptcy proceedings; (2) whether the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) whether the contrary position was the result of mistake or inadvertence. *See White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010). Each of *White*'s factors favors finding that the Haddads are estopped from contesting the validity of the mortgage.

First, the Haddads' current position—that the mortgage held by Bank of America on which RSM foreclosed is invalid—is antithetical to their sworn representations in their bankruptcy filing. *See id*. Three documents from the Haddads' bankruptcy filings indicate that the same mortgage was valid and uncontested: Schedule A to the Haddads' bankruptcy petition

(which listed the McKenzie Court property as property the Haddads owned and stated that there was a secured claim for $645,344 on the property), Schedule D (where the Haddads stated that LaSalle held a mortgage on the property and that this mortgage was not disputed), and the Haddads' Statement of Intention (where the Haddads identified LaSalle's debt as secured by the McKenzie Court property and stated that they intended to retain the property and reaffirm this debt). Both Paul and Sarena signed declarations indicating, under penalty of perjury, that these statements were true. Second, the bankruptcy court clearly accepted the Haddads' claim that this mortgage was undisputed and that they intended to reaffirm the debt.

For the third factor, we examine whether the Haddads mistakenly or inadvertently took contrary positions by assessing (1) whether the Haddads lacked knowledge of the factual basis for disputing the mortgage; (2) whether the Haddads had a motive for concealment; and (3) whether the evidence indicates an absence of bad faith. *See White,* 617 F.3d at 478. As to the first subfactor, the Haddads knew of this basis for disputing the mortgage's validity: Sarena had asserted it as a counterclaim in the discontinued 2008 lawsuit. *See id.* at 479 ("White had knowledge of the factual basis of the undisclosed harassment claim, since she had already filed a complaint before the EEOC."). Regarding the second subfactor, the Haddads had a clear motive to conceal the claim because if they did not reaffirm the mortgage, then the trustee could use the McKenzie Court property to pay creditors' claims. *Cf. id.* ("It is always in a Chapter 13 petitioner's interest to minimize income and assets." (quoting *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 426 (6th Cir. 2005))); *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003) ("[A] financial motive to secret assets exists under Chapter 13 as well as under Chapter 7 . . ."). *See also Bullard v. IndyMac Bank FSB*, No. 09-cv-12839, 2012 WL 4134839, at *7 (E.D. Mich. Sept. 18, 2012), *aff'd on other grounds,* 539 F. App'x 665 (6th Cir. 2013) ("By

concealing her potential claim against defendant [that a mortgage was invalid], the trustee did not claim the property as an asset of the estate."). Finally, the Haddads' arguing that the mortgage was invalid both before and after the bankruptcy proceedings in no way suggests an absence of bad faith. Thus all three of *White*'s factors indicate that the Haddads are judicially estopped from challenging the validity of the mortgage. *See White,* 617 F.3d at 478.

*Bullard v. IndyMac Bank FSB*, a case from the Eastern District of Michigan, provides an analogue. 2012 WL 4134839. The Bullards refinanced two mortgages but defaulted on the new mortgage. Mrs. Bullard then filed for bankruptcy. Thereafter, the Bullards filed an action claiming that the new mortgage was not valid because only one party, Mrs. Bullard, had signed it. The *Bullard* court, however, held that the Bullards were judicially estopped from contesting the validity of the mortgage. *Id.* at *7. The court pointed to Schedule D of the bankruptcy filing, which "indicated that the property was subject to a mortgage held by defendant" such that "the trustee . . . took no action to claim the property as an asset of the estate." *Id.* Like the Bullards, the Haddads cannot represent that the mortgage was valid in bankruptcy and then challenge it in another lawsuit. Accordingly, we hold that the Haddads are judicially estopped from challenging the validity of Bank of America's mortgage on which RSM foreclosed. Their 15 U.S.C. § 1692f(6) claims therefore fail.[3]

V.

For the foregoing reasons, we **AFFIRM** the district court's decision and **DISMISS** the Haddads' complaint in its entirety.

---

[3] Because we have held that the Haddads are judicially estopped from challenging the validity of the mortgage, we decline to address RSM's ratification, equitable subrogation and equitable mortgage arguments.